Jack LAVESON and Dr. Karl Silver, on their own behalf and on behalf of all others similarly situated, Appellants,

v.

TRANS WORLD AIRLINES et al.

No. 71–2156.

United States Court of Appeals, Third Circuit.

Argued Oct. 31, 1972.

Decided Dec. 26, 1972.

David Berger, Philadelphia, Pa., for appellant.

H. Francis DeLone, Dechert, Price & Rhoads, Philadelphia, Pa., for appellee.

Before KALODNER, VAN DUSEN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

The doctrine of primary jurisdiction was formulated in the last several decades as a judicial response to the creation of wide-ranging federal administrative agencies. It may be viewed as an effort to resolve procedural and substantive conflicts inevitably created when there is hewed out for an agency an area of original jurisdiction impinging on the jurisdiction of the courts.

It is in this regard that our judgment is sought here to determine the applicability of the primary jurisdiction doctrine to an antitrust action charging defendant airlines with conspiring to fix the price to coach passengers for the rental of headsets used with inflight motion pictures.

The plaintiffs, claiming to have flown as coach passengers on defendants' flights, have sued on their own behalf and as class representatives of all coach passengers who have rented headsets. They alleged that commencing in 1967 defendants conspired, in violation of the Sherman Act, to establish a $2.00 rental fee for coach passengers while providing headsets free of charge to first-class passengers.

Although originally seeking both damages and injunctive relief, plaintiffs, in response to defendants' motion to dismiss or stay the action, filed an amended complaint demanding only damages. Granting defendants' motion to dismiss directed to the amended complaint, the district court held that the action was subject to the primary jurisdiction of the Civil Aeronautics Board because it "raises various questions of fact and law which ultimately can be determined in a more informed and orderly manner if initially presented to and considered by said Board. . . ."

In their brief and at oral argument, plaintiffs have essentially asserted that the district court erred in applying the primary jurisdiction doctrine to this case and that, even if the CAB has primary jurisdiction, dismissal of the complaint, as opposed to a stay, was improper. We hold that the district court did not err in finding CAB primary jurisdiction but that the district court should have stayed the action rather than dismissing it.

### I.

Before entering the legal thicket surrounding this suit, it is appropriate to examine the regulatory setting implicated here and the CAB's past involvement in the subject matter of this case.

The air transportation industry has been placed by Congress under the detailed and continuous regulation of an administrative agency—the CAB.[1] Included within the CAB's jurisdiction are many matters that may also fall within the scope of the antitrust laws. Under the Federal Aviation Act,[2] the

1. See Pan American World Airways, Inc. v. United States, 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963).

2. 49 U.S.C. § 1301 et seq. (1970).

Board has jurisdiction over every "contract or agreement" between air carriers relating to, among other things, the establishment of transportation rates and the regulation of "destructive, oppressive, or wasteful competition. . . ."[3] Airlines are directed by the Act to file such agreements with the Board for approval.[4] Approval by the Board relieves the parties "from the operations of the 'antitrust laws', . . . insofar as may be necessary to enable such person to do anything authorized, approved, or required by such order."[5]

Since 1966, the CAB has been engaged in regulating agreements among carriers relating to charges for inflight entertainment.[6] In 1967, twelve domestic air carriers, including the defendants, filed for Board approval an agreement providing for a $2.00 charge for visual inflight entertainment on domestic flights.[7] In an opinion and order dated March 9, 1967,[8] the Board deferred definitive action on the filed agreement but stated: "We would consider that a charge of less than $2 for a full length motion picture would not be reasonable."[9] Explaining its decision to defer action, the Board asserted: "However, we have also tentatively concluded that, under the circumstances here present, the *implementation* of such a charge . . . would more appropriately be accomplished by exercise of our rate and rule making powers under the Act."[10]

Simultaneously with its March 9, 1967 opinion and order, the Board issued a notice of proposed amendments to its Economic Regulations that would require carriers offering visual inflight entertainment to provide therefor in their tariffs.[11]

"In addition, the proposed amendments would state the policy of the Board that carriers establish charges to passengers utilizing such services appropriate to the cost and value of the service provided, and that, in the absence of a contrary showing, a tariff providing for a charge of less than $2 for visual entertainment . . . would be considered unjust and unreasonable and would be suspended and investigated.[12]

On March 6, 1968, the Board adopted, in regulation ER-529, the proposed rules requiring tariff provisions for inflight entertainment charges.[13] In doing so, it deleted "all reference to a specified minimum charge for such entertainment, thereby leaving, *at least for the present*, the matter of the amount of the charge to carrier management discretion."[14] The Board also noted, however, that it "expects to use the proposed $2 charge as a benchmark in testing reasonableness of tariff filed. . . ."[15]

A few weeks later, on April 19, 1968, the Board stayed the March 6, 1968 regulations, stating: "A number of objections to the rule have been filed. In

---

3. 49 U.S.C. § 1382 (1970).

4. *Id.*

5. 49 U.S.C. § 1384 (1970).

6. In 1966, the CAB approved an agreement among international air carriers establishing a charge for rental of headsets on overseas flights. CAB Order E–23708 (May 20, 1966). That agreement has, by later approvals, been extended to the present.

7. The original complaint alleged a conspiracy as to rental charges on both transcontinental and overseas flights. In the amended complaint, plaintiffs charged a conspiracy with respect to transcontinental flights only.

8. CAB Order E–24839 (March 9, 1967), 32 Fed.Reg. 4086.

9. 32 Fed.Reg. at 4087.

10. *Id.* (emphasis supplied). The Board reasoned that implementation by rule-making would be more appropriate since, unlike agreements between parties, "our rate regulatory jurisdiction extends to all carriers." *Id.*

11. 32 Fed.Reg. 4076.

12. *Id.*

13. ER–529, Amdt. 7 (March 6, 1968), 33 Fed.Reg. 4456.

14. *Id.* (emphasis supplied).

15. *Id.* at 4457.

light of these objections, the Board has determined to stay the effectiveness of ER-529 pending further consideration of the matter."[16] The status of the matter remains the same today.

Instead of filing a written complaint with the Board,[17] plaintiffs brought the present antitrust action seeking treble damages.[17a] The precise question this Court must now decide is whether the district court erred in holding that consideration of the present suit should be deferred, on primary jurisdiction grounds, pending resort to the CAB.

## II.

■ In Far East Conference v. United States [18] the Supreme Court defined the doctrine of primary jurisdiction as:

"a principle, now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined."[19]

■ A court-made doctrine, primary jurisdiction holds that in some cases, courts should not render a decision—exercise their jurisdiction—until certain issues have been passed upon by the appropriate administrative agency.[20] In the specific context of cases within the jurisdiction of the CAB, for example, the doctrine is fashioned to insure that the antitrust exemption provided by Congress in the Federal Aviation Act not be undermined through a by-passing

---

16. ER–535, Amdt. 8 (April 19, 1968), 33 Fed.Reg. 6241.

17. 49 U.S.C. § 1482(a) (1970) provides:
"Any person may file with . . . the Board . . . a complaint in writing with respect to anything done or omitted to be done by any person in contravention of any provisions of this chapter, or of any requirement established pursuant thereto. If the person complained against shall not satisfy the complaint and there shall appear to be any reasonable ground for investigating the complaint, it shall be the duty of . . . the Board to investigate the matters complained of."

17a. In addition to arguing that primary jurisiction cannot be applied in this case because the CAB has not approved the filed agreement, plaintiffs have asserted that the conspiracy they seek to challenge under the antitrust laws is not the agreement filed for Board approval in 1967. Rather, they contend that they are attempting to mount an antitrust attack upon "an agreement to fix the prices for inflight visual entertainment in coach-class, but have no charge in first-class." Appellants' brief at 5. Whether the challenged agreement has or has not been filed is, however, not determinative of the primary jurisdiction issue. *See* text accompanying notes 27–33, *infra*. In addition, alleging an agreement to fix prices in coach class would not appear to change the nature of plaintiffs' *antitrust* claim—

the *fixing of prices* by agreement, not the alleged *discriminatory manner* in which such prices are imposed. Under these circumstances, we do not perceive any alteration in the primary jurisdiction issue before us. Furthermore, an agency's power to approve an agreement is not eliminated merely because the agreement has not been submitted. *See* United States Nav. Co. v. Cunard S.S. Co., 284 U.S. 474, 487–489, 52 S.Ct. 247, 76 L.Ed. 408 (1932), discussed in text accompanying notes, 28–30, *infra*.

18. 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952).

19. *Id.* at 574, 72 S.Ct. at 494.

20. The doctrine was created by the Supreme Court in Texas & Pac. Ry. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907). Its first application to an antitrust suit occurred in Keogh v. Chicago & N. W. Ry., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922). For general discussions of the doctrine and cases in which it has been applied, *see* Jaffe, Primary Jurisdiction, 77 Harv.L.Rev. 1037 (1964); von Mehren, The Antitrust Laws and Regulated Industries: The Doctrine of Primary Jurisdiction, 67 Harv.L.Rev. 929 (1954); Schwartz, Legal Restriction of Competition in the Regulated Industries: An Abdication of Judicial Responsibility, 67 Harv.L.Rev. 436 (1954).

of the CAB, the agency created to regulate the air transportation industry.

The present case would appear to be the very kind of action to which the primary jurisdiction doctrine applies in requiring prior resort to the regulatory agency. In Pan American World Airways, Inc. v. United States,[21] for example, the Supreme Court invoked primary jurisdiction principles in deciding an antitrust action alleging an attempt to monopolize and a conspiracy to prevent competition between Panagra, an air carrier jointly owned by the two defendants, and Pan American, one of the defendant-owners. The Supreme Court held that the complaint should have been dismissed on primary jurisdiction grounds. After finding that "the acts charged in this civil suit as antitrust violations are precise ingredients of the Board's authority . . . ,"[22] the Court concluded that not requiring prior resort to the CAB might undercut regulatory policy:

> "It would be strange, indeed, if a division of territories or an allocation of routes which met the requirements of the 'public interest' as defined in § 2 were held to be antitrust violations. It would also be odd to conclude that an affiliation between a common carrier and an air carrier that passed muster under § 408 should run afoul of the antitrust laws. Whether or not transactions of that character meet the standards of competition and monopoly provided by the Act is peculiarly a question for the Board, subject of course to judicial review as provided in 49 U.S.C. § 1486.
> " . . . If the courts were to intrude independently with their construction of the antitrust laws, two regimes might collide. . . ."[23]

That the headset controversy falls within the sweep of CAB jurisdiction is

clear. Under 49 U.S.C. § 1382, air carriers are instructed to file for Board approval "every contract or agreement . . . affecting air transportation . . . relating to the establishment of transportation rates, fares, charges, . . . or for controlling, regulating, preventing, or otherwise eliminating destructive, oppressive, or wasteful competition. . . ."

The Board has itself indicated the applicability of this section to agreements among air carriers relating to charges for inflight entertainment. Since 1967 it has been engaged in regulatory activity examining the inflight entertainment controversy.[24] Moreover, the charges for headsets, as is true for inflight entertainment fees in general, may reasonably be expected to have a direct impact upon the level of fares. As early as 1966, the Board expressed its concern that "added costs to the airlines resulting from the provision of inflight entertainment may be advanced by carriers ultimately as a reason for fare increases . . . or, conversely, that such costs may tend to preclude fare reductions which would otherwise be warranted."[25] Later in 1968, the CAB reiterated its thoughts:

> "The costs of providing this service are by no means inconsequential and, in the long run, will be recovered from the general farepayer unless the direct user pays for them. These costs, if not covered by an appropriate charge to the user, add to the need for fare increases or delay fare reductions."[26]

Plaintiffs urge, however, that, even if the Board has jurisdiction over the subject matter of the present dispute, the primary jurisdiction doctrine does not apply here because (1) the alleged conspiracy to fix charges for headsets "cannot in any degree be claimed to have

---

21. 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed. 2d 325 (1963).

22. *Id.* at 305, 83 S.Ct. at 482.

23. *Id.* at 309–310, 83 S.Ct. at 484.

24. *See* text accompanying notes 7–16, *supra.*

25. CAB Order No. E–23214 (Feb. 10, 1966).

26. CAB Reg. ER–529, Amdt. 7 (March 6, 1968), 33 Fed.Reg. 4456, 4457.

been necessary 'to do anything authorized, approved or required' by CAB order" and, therefore, antitrust immunity cannot be invoked; and (2) their antitrust action seeks not injunctive relief, but treble damages, a remedy the CAB is powerless to provide.[27] Neither argument in the present case requires that the primary jurisdiction doctrine be avoided.

The first contention suggests that courts may not properly defer to agency jurisdiction when the Board has not yet expressly approved the alleged illegal agreement. But, as relevant cases indicate, such an argument proceeds from a misunderstanding of the law. In United States Nav. Co. v. Cunard S.S. Co.,[28] an antitrust suit was brought to enjoin Cunard and others from continuing an alleged combination and conspiracy. The Supreme Court affirmed a decision "that the matters complained of were within the exclusive jurisdiction of the United States Shipping Board. . . ."[29] Although the agreement in question had not been filed with the Shipping Board after it became effective and was still unfiled when the Supreme Court handed down its decision, the Court indicated that the agreement might "be approved or allowed to stand with modifications", and added: "[I]t reasonably cannot be thought that Congress intended to strip the Board of its primary original jurisdiction to consider such an agreement and 'disapprove, cancel, or modify' it, because of a failure of the contracting parties to file it as section 15 requires."[30]

If primary jurisdiction principles apply when the challenged agreement has not even been filed with the agency, the doctrine is certainly applicable when the agreement has been filed but has not yet been expressly approved or disapproved.

Although *Cunard* involved the Shipping Act,[30a] the Court of Appeals for the District of Columbia has applied the same principle in S.S.W., Inc., v. Air Transport Ass'n of America,[31] a case involving the jurisdiction of the CAB. That suit was brought by a "nonscheduled" airline against regularly certified air carriers and their trade association, charging various violations of the antitrust laws. After determining that the Civil Aeronautics Act " 'covers the dominant facts alleged in the present case as constituting a violation of the Anti-Trust Act'," [32] the court applied the primary jurisdiction doctrine requiring prior resort to the agency, notwithstanding "that Board approval of the agreements and understandings charged in the complaint has not yet been obtained." [33]

Because of the possibility that, in exercising its power over the subject matter of this controversy, the Board may approve the agreement here alleged to violate the antitrust laws, we hold that prior resort by plaintiffs to the CAB is required.

Plaintiffs contend, however, that, in seeking only damages, their case is distinguishable from the *S. S. W.* action, which prayed for injunctive relief as well as damages. Although few cases aside from *S. S. W.* treat the issue explicitly, plaintiffs cite Slick Airways, Inc. v. American Airlines, Inc.,[34] Aloha

---

27. *See, e. g.*, S. S. W., Inc. v. Air Transport Ass'n. of America, 89 U.S.App.D.C. 273, 191 F.2d 658, 662 (1951), cert. denied, 343 U.S. 955, 72 S.Ct. 1049, 96 L.Ed. 1355 (1952).

28. 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408 (1932).

29. *Id.* at 478–479, 52 S.Ct. at 248.

30. *Id.* at 487, 52 S.Ct. at 251.

30a. *See* note 46, *infra*.

31. 89 U.S.App.D.C. 273, 191 F.2d 658 (1951), cert. denied, 343 U.S. 955, 72 S.Ct. 1049, 96 L.Ed. 1355 (1952).

32. *Id.* at 662, quoting United States Navigation Co. v. Cunard S.S. Co., 284 U.S. 474, 483, 52 S.Ct. 247, 76 L.Ed. 408 (1932).

33. *Id.* at 663.

34. 107 F.Supp. 199 (D.N.J.1951), appeal dismissed, American Airlines v. Forman, 204 F.2d 230 (3d Cir.), cert. denied,

Airlines, Inc. v. Hawaiian Airlines, Inc.,[35] and Carnation Co. v. Pacific Westbound Conf.[35a] to support their position.

In *Slick*, an air freight common carrier, alleging that defendant airlines had conspired to drive it out of business, sought an injunction and treble damages under the antitrust laws. The district court, in an exhaustive opinion by Judge Forman, denied defendants' motion to dismiss the complaint, holding, inter alia, that a conspiracy to drive a competitor out of business was not "the type of agreement encompassed within the statute and subject to the primary jurisdiction of the CAB for approval or disapproval and for possible immunity from the antitrust laws."[36] The court also indicated, however, that the "inadequacy of such a [CAB] remedy is apparent",[37] and held, for this reason as well as because of the CAB's lack of subject matter jurisdiction, that application of the primary jurisdiction doctrine was inappropriate.

In addition to being rejected by the *S. S. W.* Court of Appeals,[38] the *Slick* implication that in antitrust suits for treble damages primary jurisdiction principles are inapplicable was not followed in Apgar Travel Agency, Inc. v. International Transport Ass'n.[39] The district court there stated: "The doctrine of primary jurisdiction is conditioned, not upon the ability of the administrative agency to grant a remedy, but upon the presence of problems calling for the kind of consideration which only the administrative agency is in a position to give."[40]

Aloha Airlines, Inc. v. Hawaiian Airlines, Inc.,[41] cited by plaintiffs for the proposition that actions seeking damages should be distinguished from those praying injunctive relief, in fact rests upon a different rationale. The district court refused there to apply the primary jurisdiction doctrine not solely on the ground that the CAB lacks the power to award damages, but also because defendant's past conduct was "no longer a problem."

The *Aloha* court expressly relied upon the Second Circuit's refusal to defer to the CAB's jurisdiction in Allied Air Freight, Inc. v. Pan American World Airways, Inc.[42] In *Allied*, because one plaintiff was bankrupt and the other insolvent, "determination of the issues . . . by the court [would have had] no effect on the future conduct of the parties and [would not have impinged] upon the agency's ability to promote a uniform scheme of regulation by approving or disapproving of similar agreements in the future . . ."[43] The court's conclusion was buttressed by the fact that the challenged agreement had terminated and plaintiff had conceded that otherwise "the Board would have primary jurisdiction and no antitrust suit could proceed until the Board issued an order approving or disapproving the agreement."[44]

American Airlines v. Slick Airways, 346 U.S. 806, 74 S.Ct. 54, 98 L.Ed. 336 (1953).

35. 349 F.Supp. 1064 (D.Hawaii, filed Oct. 11, 1972).

35a. 383 U.S. 213, 86 S.Ct. 781, 15 L.Ed.2d 709 (1966).

36. 107 F.Supp. at 207.

37. *Id.* at 211.

38. S. S. W., Inc. v. Air Transport Ass'n of America, 89 U.S.App.D.C. 273, 191 F. 2d 658, 665 n. 33 (1951), cert. denied, 343 U.S. 955, 72 S.Ct. 1049, 96 L.Ed. 1355 (1952).

39. 107 F.Supp. 706 (S.D.N.Y.1952).

40. *Id.* at 711. *See* Ricci v. Chicago Mercantile Exchange, 447 F.2d 713 (7th Cir. 1971), cert. granted, 405 U.S. 953, 92 S. Ct. 1173, 31 L.Ed.2d 230 (1972) (argued October 18, 1972, 41 U.S.L.W. 3224) ; *cf.* Pan American World Airways, Inc. v. United States, 371 U.S. 296, 313 n. 19, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963).

41. 349 F.Supp. 1064 (D.Hawaii, filed Oct. 11, 1972).

42. 393 F.2d 441 (2d Cir.), cert. denied, 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (1968) ; *cf.* Danna v. Air France, 463 F.2d 407, 411 (2d Cir. 1972).

43. *Id.* at 445.

44 *Id.* at 446.

The court in *Allied* found support for its position in Carnation Co. v. Pacific Westbound Conference.[45] In *Carnation*, a shipper, charging the defendants with rate-fixing not approved by the Federal Maritime Commission, sued for treble damages under the antitrust laws. The Supreme Court, upholding application of the primary jurisdiction doctrine, required the lower court to await a determination by the Commission whether defendants' actions constituted the implementation of approved agreements.

Setting guidelines for appropriate judicial deference to agency jurisdiction, *Carnation* stated that the *Cunard* and *Far East* decisions "merely hold that courts must refrain from imposing antitrust sanctions for activities of debatable legality under the Shipping Act. . . ."[46] At the same time, the Court noted that although the "unconditional" injunctive relief requested in *Cunard* and *Far East* might have "hampered" exercise of the agency's power to "decide to approve the prospective implementation of [the challenged agreements]",[47] granting damages for actions clearly violating the Shipping Act would not interfere with action by the Commission.

Unlike the Federal Aviation Act, however, the Shipping Act, involved in *Cunard, Far East*, and *Carnation*, provided antitrust immunity for approved agreements, but expressly withheld immunity from agreements not yet approved.[48] Thus, as conceded in *Carnation*, "the [Federal Maritime] Commission has no power to validate pre-approval implementation of such agreements."[49] In the present case, until it has been decided whether the CAB has the power to immunize retroactively pre-approval conduct, it cannot be determined whether defendants' conduct is legal or illegal. Because such a determination of the Board's power should be made by the CAB, at least in the first instance,[50] we conclude that this case presents a situation in which the challenged actions are of "debatable legality."

Moreover, unlike *Allied, Aloha*, and *Carnation*, a judicial adjudication of the antitrust issues in this case might well disrupt the overall scheme of agency regulation if the CAB has the power to immunize pre-approval conduct. The fact remains that, regardless of the particular remedy sought, the subject matter of this action falls within the regulatory jurisdiction of the CAB. If courts fail to apply the primary jurisdiction doctrine in suits for damages, "we might [still] have the spectable [sic] of courts throughout the country enjoining practices as violations of the antitrust laws even though the agency specifically authorized to deal with them has determined or may decide, subject to judicial review, that such practices serve the interests of the national air transportation policy."[51]

■■ The rationale for applying the primary jurisdiction doctrine does not depend upon the particular kind of relief plaintiffs request. Rather, it rests upon a judicial reluctance to hold

---

45. 383 U.S. 213, 86 S.Ct. 781, 15 L.Ed. 2d 709 (1966).

46. *Id.* at 220, 86 S.Ct. at 786.

47. *Id.* at 221, 86 S.Ct. at 786.

48. 46 U.S.C. § 814 (1964).

49. 383 U.S. at 222, 86 S.Ct. at 787.

50. Judicial determination of the Board's power would more appropriately be made after it has acted or in an antitrust suit after resort to the CAB. Such would require, in part, examining whether a lack of power to immunize retroactively might undermine regulatory stability if, during the period between the filing of agreements and Board approval, airlines were open to antitrust attack. *See* Interstate Investors, Inc. v. Transcontinental Bus System, Inc., 310 F.Supp. 1053 (S.D.N.Y.1970). Any light shed upon the matter by the CAB might assist the court in reaching a conclusion consistent with enforcing the antitrust laws and maintaining the vitality of the agency.

51. S. S. W., Inc. v. Air Transport Ass'n of America, 89 U.S.App.D.C. 273, 191 F. 2d 658, 663 (1951), cert. denied, 343 U.S. 955, 72 S.Ct. 1049, 96 L.Ed. 1355 (1952).

practices within the scope of an agency's jurisdiction to be antitrust violations and then to act upon such holding by granting relief—damages or injunction —before prior resort to the agency. Although idioms of judicial reticence are not apt to arouse much fervor or open new vistas, a different judicial posture might well cause "[t]he unity of the system of regulation . . . [to break] down beyond repair."[52] We thus decline to limit the doctrine of primary jurisdiction in suits involving CAB regulation to suits for injunctive relief.

At the same time, because of the nature of the present suit, we conclude that instead of outright dismissal, the district court should only have stayed the present action. "[A] treble-damage action for past conduct cannot be easily reinstituted at a later time. Such claims are subject to the Statute of Limitations and are likely to be barred by the time the Commission acts."[53] Under 15 U.S.C. § 15b (1970), plaintiffs' antitrust action is subject to a four year statute of limitations. Precluding them from filing suit until after the CAB acts may in effect bar a portion or all of their damage claim even should the Board not approve the challenged agreements. Because of the possible prejudice dismissal of their action might cause, the suit should be stayed and the district court should retain jurisdiction pending resort to the CAB.[54]

For the foregoing reasons, the order of the district court of October 29, 1971 dismissing the action will be vacated, and the case remanded with directions to stay proceedings in the district court in accordance with this opinion.

---

52. *Id.* quoting Terminal Warehouse v. Pennsylvania R. Co., 297 U.S. 500, 513, 56 S.Ct. 546, 551, 80 L.Ed.2d 827 (1936).

53. Carnation Co. v. Pacific Westbound Conf., 383 U.S. 213, 223, 86 S.Ct. 781, 787, 15 L.Ed.2d 709 (1966). *But cf.* Prive v. Trans World Airlines, Inc., Civ. No. 70–2598–CC (C.D.Cal., filed Nov. 9,

1970), appeal docketed, No. 71–165 (9th Cir. 1971).

54. In view of our decision in this case, we reject plaintiffs' contention that the present record was inadequate for determination of the primary jurisdiction issue and that discovery should have been permitted.