**Gerald L. PRICE et al., Plaintiffs-Appellants,**

**v.**

**TRANS WORLD AIRLINES, INC. et al., Defendants-Appellees.**

**No. 71-1635.**

United States Court of Appeals, Ninth Circuit.

June 29, 1973.

Norman G. Axe (argued), Beverly Hills, Cal., for plaintiffs-appellants.

Henry C. Thumann (argued), Warren Christopher, Thomas J. Ready, James V. Selna, of O'Melveny & Myers, Frank DeMarco, Jr., of Kalmbach, DeMarco, Knapp & Chillingworth, Los Angeles, Cal., for defendants-appellees.

Before BARNES, DUNIWAY and TRASK, Circuit Judges.

TRASK, Circuit Judge:

The defendant airlines furnish headsets free of charge to first class passengers to enable them to listen to the audio portion of in-flight movies, but make a charge to coach passengers for the same service. Relying on the Sherman Act, 15 U.S.C. §§ 1 and 2, and the Clayton Act, 15 U.S.C. §§ 15 and 22, as the basis for their .claim of "an unlawful combination and conspiracy," the plaintiffs for themselves and all others similarly situated seek damages in a sum in excess of $1,000,000, to be trebled, plus attorneys' fees. In a second class action count under Rule 23, Fed.R.Civ.P., they charge an "unjust discrimination" in violation of section 404(b) of the Federal Aviation Act, 49 U.S.C. § 1374(b), and seek to recover a sum in excess of $100,000,000 plus attorneys' fees.

The defendants filed a motion to stay or, in the alternative, to dismiss the action until the plaintiffs had first initiated and exhausted the Civil Aeronautics Board's primary jurisdiction over the subject matter of the complaint. The trial court on March 16, 1971, dismissed the action on the grounds (1) that the subject matter was within the primary jurisdiction of the Civil Aeronautics Board; (2) that the complaint failed to state a claim upon which relief could be granted; (3) that it was frivolous; (4)

and that it did not constitute a proper class action. The order provided that the dismissal was without prejudice to the plaintiffs' right to file a new complaint at such time as the claims might have been presented and determined by the C.A.B. Believing that the first reason given by the court is dispositive here, we turn to a discussion of it.

Early in the development of the aviation industry Congress came to the conclusion that a system of unbridled competition restricted and controlled by the application of antitrust sanctions was not in the best public interest. It thereupon enacted the Civil Aeronautics Act of 1938 which was superseded by the Federal Aviation Act of 1958. Transportation by air thus became a regulated monopoly in the public interest, the interests of the Postal Service, and of the national defense. 49 U.S.C. § 1302. Congress continued the Civil Aeronautics Board, created as the Civil Aeronautics Authority in 1938 (49 U.S.C. § 1341), and gave it the power and authority to investigate "unfair or deceptive practices or unfair methods of competition in air transportation" (49 U.S.C. § 1381), and to control the same. *See* Pan American World Airways, Inc. v. United States, 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963). Congress required every agreement between air carriers relating to rates, fares or charges, or for controlling competition to be filed and approved by the Board. 49 U.S.C. § 1382. It then provided:

"Any person affected by any order made under sections 1378, 1379 or 1382 of this title shall be, and is hereby, relieved from the operation of the 'antitrust laws', as designated in section 12 of Title 15, and of all other restraints or prohibitions made by, or imposed under, authority of law, insofar as may be necessary to enable such person to do anything authorized, approved, or required by such order." [1] 49 U.S.C. § 1384.

The pattern for this requirement of resort to the administrative agency before resort to the courts had already been established for transportation on the ground, Keogh v. Chicago & Northwestern Ry., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922), and for transportation by sea. Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952); United States Navigation Co. v. Cunard Steamship Co., 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408 (1932).

It was not surprising that the Supreme Court should be quick to recognize in the broad statutory pattern of the Federal Aviation Act the same basic requirement that primary jurisdiction to determine disputes involving air carriers under the sections set forth in the Act should rest first with the C.A.B. Such was the decision in Pan American World Airways, Inc. v. United States, *supra*, which involved an agreement between carriers as to routes.

With the foregoing general discussion as a background for the application to this case of the doctrine of primary jurisdiction, we turn to the position taken by appellants. First, they contend that the C.A.B. "as a matter of policy" would not entertain a case involving antitrust issues without first consulting with the Justice Department. Therefore, they continue, this is proof of the fact that the C.A.B. does not propose to exercise "the expertise and primary jurisdiction of the C.A.B. in this area." This argument is apparently based upon a reply by the general counsel of the C.A.B. to a letter addressed to him by appellants' counsel in a proceeding apparently identical to this in the Los Angeles Superior Court. Appellants' counsel had requested the C.A.B. to make a statement on the issues in that case which counsel could present to

---

1. Section 1378 regulates consolidation, merger and acquisition of control; section 1379 describes and prohibits interlocking relationships and profit from transfer of securities between certain persons engaged in aeronautics. The Clayton Act, insofar as applicable to air carriers, is enforceable by the Board.

the trial court on a motion for reconsideration. (We do not find appellants' letter in the record.) Not surprisingly, the general counsel declined, asserting a time factor as one reason and commenting in that connection "that the case involves issues of unfair competition and antitrust immunity and hence consultation with the Department of Justice would be essential." He also pointed out that participation in private litigation by C.A.B. is normally as an amicus curiae upon authorization of the Solicitor General of the United States. In other words it was a polite but firm refusal to a rather astonishing request. We find nothing in it to suggest that the C.A.B. intended to relinquish its statutory and official responsibilities in this or any other area.

The next response to the doctrine of primary responsibility was appellants' contention that the administrative record disclosed that the C.A.B. had already acted, thus leaving the way clear for the district court to proceed. We do not read the record so. In September 1965, Eastern Airlines, Inc. petitioned the Board for authority for trunk line air carriers, including defendants, to meet and discuss in-flight entertainment. Twelve air carriers met pursuant to the authority granted and a proposed agreement resulted which provided for a $2 charge for in-flight entertainment. It was filed with the Board as directed.

The Board considered the proposed agreement and certain objections thereto and came to the conclusion that the problem would be better handled under the Board's rulemaking and rate making powers than by approval of an agreement. Its Opinion and Order Deferring Action (C.A.B. Order No. E–24839 adopted March 9, 1967, C.T. at 115) recited the carriers' proposed agreement, the objections thereto, oral arguments heard thereon, and concluded that pending final determination of its rulemaking proceeding, it would defer action on the proposed agreement.

"The Board has carefully considered all matters presented, and has concluded that an appropriate passenger charge should be assessed for the provision of visual in-flight entertainment. In addition, based on the cost presented in this proceeding, we would consider that a charge of less than $2.00 for a full length feature motion picture, would not be reasonable. However, we have also tentatively concluded that, under the circumstances here present, *the implementation of such a charge in interstate and overseas air transportation* would more appropriately be accomplished by *exercise of our rate making powers under the Act.* Accordingly, we are simultaneously herewith issuing a notice of proposed rule making proposing amendments to the rules as hereinafter described, to achieve this objective. Pending final determination of the rule making proceeding we will defer action on the proposed agreement." (Emphasis supplied) C.A.B. Order No. E–24839, C.T. at 117–18.

The Board continued its discussion of how best a charge for such in-flight entertainment should be borne and stated:

"Nevertheless, it may well be preferable for in-flight entertainment to be the subject of individual carrier initiation, subject to our rate control powers, rather than being established by collective carrier action." *Id.* C. T. at 120.

Subsequently by Regulation No. ER–529 the Board adopted a rule regarding in-flight entertainment tariff charges. With respect to an objection that the proposal would discriminate against passengers who avail themselves of visual in-flight entertainment because it would eventually raise their fares, the Board said:

"There is no such discrimination. The charge is equitably levied on those who use a special service not generally used by passengers and they will be required to bear a greater share of the costs—although not all the costs of the service—than those who cannot or do not use it. If there

is any case to be made with respect to discrimination, it lies in the present system wherein passengers in general bear the cost of a service used by only a relatively few passengers. The costs of providing this service are by no means inconsequential and, in the long run, will be recovered from the general farepayer unless the direct user pays for them. These costs, if not covered by an appropriate charge to the user, add to the need for fare increases or delay fare reductions." Regulation No. ER–529, C.T. at 134.

The Board then terminated the proceeding concerning the carriers' proposed agreement without approving or disapproving it. On April 19, 1968, the C.A.B. stayed the effectiveness of the rule it had promulgated, pending further consideration of the entire subject. (Reg. ER–535). The administrative record thus makes clear to us (1) that the C.A.B. has not abdicated its responsibilities for primary consideration, and (2) that it considers the problem one of rate making, and (3) that it considers the carriers' proposals to impose some kind of charge for in-flight entertainment with approval.

Appellants argue that because they seek only treble damages with no other relief, they may prevail despite the requirement of primary consideration by the agency. They rely on Carnation Co. v. Pacific Westbound Conference, 383 U.S. 213, 86 S.Ct. 781, 15 L.Ed.2d 709 (1966). We do not read it so. On the contrary the Court there insisted that the action of the complaining party not be dismissed, but only be stayed pending Shipping Act proceedings. Carnation Co. v. Pacific Westbound Conference, *supra*, 383 U.S. at 224, 86 S.Ct. 781. *See* Laveson v. Trans World Airlines, Inc., 471 F.2d 76 (3rd Cir. 1972). The appellants thus may still seek relief under section 1002(a) of the Federal Aviation Act of 1958, 49 U.S.C. § 1482(a).[2]

■ We agree with the trial court that the first cause of action was within the primary jurisdiction of the C.A.B. and must be stayed pending exercise of that jurisdiction.[3]

The second cause of action asserted by appellants was based upon unjust discrimination violating section 404(b) of the Act, 49 U.S.C. § 1374(b).[4]

In addition to the asserted discrimination between first class passengers and coach passengers with respect to charges for headsets to listen to the audio portion of in-flight movies, appellant argues discrimination in the difference in terms for furnishing headsets for other audio entertainment. We view the various factual situations as presenting the same legal problem.

If all of the passengers about whom the claim of discrimination is made are on the same flight, *i. e.*, with the same equipment, at the same time with the same seating, paying the same fare or tariff so that the asserted discrimination is the only variable, then the alleged discriminatory practices are easily isolated. In such a case if the Board has

2. Section 1002(a) provides in pertinent part:

"(a) Any person may file with the . . . Board, . . . a complaint in writing with respect to anything done or omitted to be done by any person in contravention of any provisions of this chapter, or of any requirement established pursuant thereto. If the person complained against shall not satisfy the complaint and there shall appear to be any reasonable ground for investigating the complaint, it shall be the duty of the Administrator or the Board to investigate the matters complained of." 49 U.S.C. § 1482(a).

3. *See* Laveson v. Trans World Airlines, Inc., 471 F.2d 76 (3rd Cir. 1972), a case of remarkable similarity, with which we are in entire agreement.

4. Section 404(b) provides:

"(b) No air carrier or foreign air carrier shall make, give, or cause any undue or unreasonable preference or advantage to any particular person, . . . in any respect whatsoever or subject any particular person, . . . to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever." 49 U.S.C. § 1374(b).

taken no action it is possible that a court could make a determination. Here, however, there are other variables, the principal one being that one group is charged a higher fare or tariff than those who claim they have been discriminated against.

In such a case the expertise of the Board as to tariff structure becomes all important. Perhaps it is true that the coach passengers should not have to pay the extra charge. On the other hand, comparing the cabin services and accommodations with the fares, perhaps the coach passengers are not paying enough. We doubt that this is a determination which Congress intended to place upon the courts. As stated in Lichten v. Eastern Airlines, Inc., 189 F.2d 939, 941 (2nd Cir. 1951):

> "A primary purpose of the Civil Aeronautics Act is to assure uniformity of rates and services to all persons using the facilities of air carriers. Civil Aeronautics Act §§ 404(a), 902(a), 49 U.S.C.A. §§ 484(a), 622(a). To achieve this, it is essential in the judgment of Congress, that a single agency, rather than numerous courts under diverse laws, have primary responsibility for supervising rates and services."

The Supreme Court in Texas & Pacific Ry. v. Abilene Cotton Oil Co., 204 U. S. 426, 440–441, 27 S.Ct. 350, 355, 51 L. Ed. 553 (1907), emphasized the problem with these words:

> "For if, without previous action by the Commission, power might be exerted by courts and juries generally to determine the reasonableness of an established rate, it would follow that unless all courts reached an identical conclusion a uniform standard of rates in the future would be impossible, as the standard would fluctuate and vary, dependant upon the divergent conclusions reached as to reasonableness by the various courts called upon to consider the subject as an original question. Indeed the recognition of such a right is wholly inconsistent with the administrative power conferred upon the Commission and with the duty, which the statute casts upon that body, of seeing to it that the statutory requirement as to uniformity and equality of rates is observed."

Under section 1002(a), *supra,* n. 2, appellants here have a remedy which they have not yet sought; that is, to obtain an administrative determination.[5]

The cases upon which appellants rely to support this cause of action we find distinguishable in that they do not involve tariff problems. Thus, Fitzgerald v. Pan American World Airways, Inc., 229 F.2d 499 (2nd Cir. 1956), was a case where the carrier refused to permit black passengers who had been issued valid through tickets to Australia to reboard after an enroute stop in Honolulu. The trial court dismissed the complaint for failure to properly allege diversity jurisdiction under the discrimination section as then written. 49 U.S.C. § 484(b) (1952). Although not controlling, the court also noted that the doctrine of "exclusive primary jurisdiction" did not apply. 229 F.2d at 502. There was no question presented that the passengers had not been charged and had not paid the proper tariff. The complaint alleged racial discrimination.

Two other cases principally relied upon by appellants are "bumping" cases. Mortimer v. Delta Air Lines, 302 F. Supp. 276 (N.D.Ill.1969), and Wills v. Trans World Airlines, Inc., 200 F.Supp. 360 (S.D.Cal.1961). In each of them the complaining passenger had made his reservation and had paid the appropriate tariff. In *Wills,* he was denied a seat because the space on the plane was oversold and his space was given to a

---

5. Similar cases which have been adjudicated by the Board are: Delta Off-Peak Coach Fares, 39 CAB 377 (1963) (late night tariffs with coach rates for first class service); American Airlines, Military Fares, 38 CAB 1038 (1963) (respecting lower military standby fares).

first class passenger; in *Mortimer*, he was denied boarding because seats were oversold. Thus in each of the three there was no charge of preferential treatment during flight, as between first class passengers and coach passengers, because of the difference in tariff. *Cf.* Archibald v. Pan American World Airways, Inc., 460 F.2d 14 (9th Cir. 1972).

Appellants' authorities are based upon a charge of complete exclusion from the flight because of overselling the space. The amount of the tariff and the services to which the passenger was entitled vis-à-vis others on the flight was not in question. Moreover, the Board itself determined that the matter of in-flight entertainment could best be handled by the affirmative exercise of the Board's rate making powers.[6]

We conclude that the determination of the trial court was correct and that the case must be remanded with directions to stay all proceedings in accordance with the views expressed herein.

---

[6]. Order Terminating Proceeding, No. E-26478, adopted March 6, 1968. Although the Board's action is not conclusive on this court, its views of what is encompassed within its rate powers is of no little persuasion.

*See also* Danna v. Air France, 463 F.2d 407 (2nd Cir. 1972).