**FOREMOST INTERNATIONAL TOURS, INC.,
Plaintiff-Appellee,**

v.

**QANTAS AIRWAYS LIMITED, Doe One through Doe Ten, Inclusive, Defendants-Appellants.**

No. 74–2463.

United States Court of Appeals, Ninth Circuit.

Oct. 22, 1975.

Rehearing and Rehearing En Banc Denied Jan. 16, 1976.

---

**3.** Appendix 26.

George N. Tompkins, Jr., New York City (argued), of Condon & Forsyth, New York City, for defendants-appellants.

Kevin B. Hughes (argued), Honolulu, Hawaii, for plaintiff-appellee.

## OPINION

Before BARNES, KILKENNY and GOODWIN, Circuit Judges.

BARNES, Senior Circuit Judge:

Plaintiff-Appellee Foremost International Tours, Inc., is a wholesaler of tour programs. Its business consists of arranging for and putting together the necessary elements of land and air transportation, hotel accommodations, car rentals, sightseeing excursions, and so forth, to create a fully inclusive tour package, and then in operating, overseeing and selling these tours. Foremost markets its tour programs through retail outlets including travel agents and the ticket offices of those airlines which sponsor or participate in providing the air transportation phase of the tour in question.

Defendant-Appellant Qantas is a foreign air carrier, which up until March 31, 1974, was a participating airline in one of Foremost's tours. On November 7, 1973, Qantas informed Foremost that it would not renew its annual contract (expiring March 31, 1974) with Foremost to provide air transportation for Foremost's "Royal Road Tours"; and on April 1, 1974, Qantas extended its operations and itself entered the business of producing and selling an integrated tour package in competition with Foremost.

Foremost subsequently brought this antitrust action against Qantas alleging violations of sections 1 and 2 of the Sherman Act, and complaining that the conduct of Qantas surrounding its entrance into the inclusive tour industry showed a clear intent to monopolize the inclusive tour industry, and was undertaken with predatory intent, and with the purpose of eliminating Foremost as a competitor in the market. (C.T. 11–12).

The District Court found that Foremost was faced with being irreparably injured (its very existence was endangered—see, finding 18, C.T. 492), and that the actions taken by Qantas in its vertical-conglomerate expansion into the tour business established a *prima facie* violation of the antitrust laws (379 F.Supp. 88, 97, D.Haw.1974). Consequently, the District Court issued a preliminary injunction against Qantas enjoining it from engaging in certain proscribed conduct in its operation of competing integrated tours. However, since many issues involved in the case [1] are matters affecting the air transportation industry regulated by the Civil Aeronautics Board (hereinafter CAB) the district judge, while retaining jurisdiction, stayed further proceedings in the District Court until the CAB could consider those matters which were in its primary jurisdiction.

Qantas appeals from the issuance of the preliminary injunction. We summarize the issues appellant raises as follows: (1) whether it was appropriate for the District Court to issue a preliminary injunction when: (a) the subject matter was arguably within the primary jurisdiction of the CAB; (b) the CAB arguably could have provided under the suspension power of 49 U.S.C. § 1482(j)(2) the prophylactic relief sought by Foremost, and (c) the provisions of § 414 of the Federal Aviation Act, 49 U.S.C. § 1384, grant a limited antitrust immunity to various acts approved by the CAB; and (2) regardless of the outcome of the first issue, whether the requirements for the issuance of the preliminary injunction were met in this case at all.

This court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

1. As examples of such issues the District Court listed: "whether an airline such as Qantas may conduct an in-house tour operation, whether the acts of Qantas alleged in the complaint constitute unfair or deceptive practices or unfair methods of competition in air transportation or the sale thereof and whether the acts of Qantas alleged in the complaint have anticompetitive effects."

Another example of this sort of issue would be whether by means of improper accounting methods relating to fixed cost allocation and translation of foreign exchange rates, Qantas was violating its tariff and illegally subsidizing its land tour operations with air fare revenues.

We affirm.

Were this an antitrust case where the anticompetitive effects of the complained of action were *confined* to, and primarily affected the regulated industry, *and* the regulatory agency had the power and authority to protect the status quo should it deem it necessary by issuing a cease and desist order, we would then agree with appellant that in issuing a preliminary injunction the District Court would be acting contrary to the intent of Congress when it established regulatory agencies to provide pervasive, coordinated, and uniform administration of an industry. These are the basic principles enunciated by the Supreme Court in *Pan American World Airways, Inc. v. United States,* 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1962). But this is *not* such a case.

The instant case is not the normal type of case where the District Court's jurisdiction and the regulatory jurisdiction of an administrative agency conflict. In the usual case, we face one of two situations: (1) where one firm in a regulated industry is suing another firm in the same regulated industry over some intra-industry squabble relating to unfair competition, violation of some regulatory rule, territory allocation, horizontal agreements, or some other wholly intra-industry problem within the jurisdiction of the regulatory agency,[2] or (2) when the consumers of the regulated industry's product or service are objecting to the effects upon the quality, availability, or cost of the goods or service due to intra-industry combinations (*i. e.,* price fixing, territory allocation, etc.), the regulation of which is also wholly within the province of the administrative agency.[3]

■ In those cases where the complained of action has an anticompetitive effect primarily confined to the regulated industry in question (including necessarily the effect on its consumers who are those primarily affected by any anticompetitive influences in the industry) and where the anticompetitive effects arise from regulation, conduct, accords, agreements, etc. which are wholly of an intra-industry nature, the only appropriate course of action for a district court to take when faced with a conflict between regulatory agency jurisdiction over these matters, and the court's own antitrust jurisdiction is: (1) to dismiss the antitrust action and refrain from itself acting until a review of the agency's determination of the matter comes before it, or (2) in the event that the agency does not have sufficient means to provide the full panoply of antitrust remedies sought, stay the proceedings in the District Court until after the regulatory agency has acted. *See Pan American v. United States, supra,* at 313 n. 19, 83 S.Ct. 476; Report of the Attorney General's National Committee to Study the Antitrust Laws, 282 (1955).

■ The purpose of the *Pan Am* Rule is that when a regulatory agency has pervasive authority and the ability and expertise to exercise coordinated control over an entire industry and over all facets of that industry's industrial behavior, the agency having this overview of the entire industry is in the better position to resolve wholly intra-industry problems, and, being more attuned to the problems of the whole industry, better able to formulate and implement remedies which are flexible and deal with *all* of the intra-industry ramifications of an intra-industry problem. Whether this purpose is always achieved is sometimes in doubt. In essence, it reflects a congressional determination that continuing regulation is a better calibrated tool for

---

2. *See, e. g., Allied Air Freight v. Pan Am. World Airways, Inc.,* 393 F.2d 441 (2d Cir.), *cert. denied,* 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (1968); *S. S. W., Inc. v. Air Transport Ass'n of Am.,* 89 U.S.App.D.C. 273, 191 F.2d 658 (1951); *Trans-Pacific Airlines, Ltd. v. Hawaiian Airlines, Ltd.,* 174 F.2d 63 (9th Cir. 1949); *cf. DHL Corp. v. Loomis Courier Service, Inc.,* 522 F.2d 982 (9th Cir. 1975) [decided 8/7/75].

3. *See, e. g., Price v. Trans World Airlines, Inc.,* 481 F.2d 844 (9th Cir. 1973); *Laveson v. Trans World Airlines, Inc.,* 471 F.2d 76 (3rd Cir. 1972); *Nader v. Allegheny Airlines, Inc.,* 512 F.2d 527 (D.C.Cir.1975).

dealing with and controlling anti-competitive behavior within an industry than the more blunt and generalized instrument of the antitrust laws. Agencies, because their interests are narrowed and fixed on one industry, may be better able to balance the competing interests within the industry and the welfare of the consumers of the industry's service or product. In light of these factors, the District Court is to refrain from immediate or hasty interference in intra-industry problems of industries subject to the control of a regulatory agency, until the regulatory agency has had an opportunity to carry out the functions for which it was initially created by Congress. The policy more simply stated is that when a matter is wholly an intra-industry problem the agency created to regulate that industry should initially determine that problem.

█ Where, however, the antitrust problem facing the court is not wholly confined to the regulated industry, other factors and policy considerations may substantially alter the desirability of according such substantial deference to an agency which does not have a perspective broader than its own industry, or the interest, expertise, power, or willingness to deal with an inter-industry problem.

Even were this a case where a firm in a regulated industry entered into a business not regulated by the regulatory agency in question or vice versa (where a firm in an industry not regulated by the agency in question enters the regulated industry), and by either entry creates anticompetitive effects *confined* to the regulated industry in such an instance the regulatory agency might still deserve to be accorded this same degree of deference since the agency still has an incentive to act because of the adverse economic effect on its own industry, and it would still have authority to act and the means to enforce its decisions due to its control over firms operating within the regulated industry. (*Cf. Hughes Tool Co. v. Trans World Airlines, Inc.,*

409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973).)

But in the instant case, the situation is different. Here we have Qantas, a firm engaged in a regulated industry, entering the tour industry, which is not *per se* regulated by the CAB, and its entry into this industry is alleged to have had an anticompetitive effect on the non-CAB-regulated tour industry. In this case, while the CAB has authority over Qantas, and arguably has the means to enforce an order against Qantas should it so choose, in lacking authority over all the parties, it cannot make the accommodations and effect the compromises which are the hallmark of agency regulation. It may well lack the means to deal with the total problem. But more importantly, the regulatory agency here also lacks the *expertise* and the *incentive* (—after all it is not its industry—) to act on an inter-industry problem. There is the danger that in cases such as this the regulatory agency might favor its own regulated industry at the expense of non-regulated commerce, or at the very least, might consider the resolution of such matters to be of a less pressing priority.

Where, as in the first of our examples, the complained of actions affect only intra-industry competition, and such anticompetitive actions (which would otherwise be outlawed), may, on approval by the regulatory agency, be thereby conferred a limited antitrust immunity, under statutes such as 49 U.S.C. § 1384, the reasoning, purpose and congressional intent behind such immunity statutes, being that integrated and pervasive regulation over an industry is thought of as a substitute for antitrust laws (*see* Report of the Attorney General's National Committee to Study the Antitrust Laws, 261–62 (1955)) makes them inapposite and inapplicable to cases such as the one now facing us which deal with inter-industry problems.

█ For instance, we do not think it would be seriously contended that the CAB could by its approval of a merger between an airline and a hotel chain, or

by the memorialization of a resolution allowing airlines to go into the hotel business, legally permit an airline to monopolize the hotel business with impunity; nor if several airlines went into the hotel business, approve their dividing up of territories, or fixing prices in the hotel business. Neither do we think the CAB's approval of IATA Resolution 810 D & E permitting airlines to go into the tour business immunizes Qantas for an attempt (if proven) to monopolize the tour business over which the CAB in general has no control. The scope of the antitrust immunity which an agency's approval can confer under statutes such as 49 U.S.C. § 1384 was intended to be, and is, no broader than the industry regulated. *Butler Aviation Co. v. CAB,* 389 F.2d 517, 521 (2d Cir. 1968). A regulatory agency's approval of certain actions cannot confer antitrust immunity to those actions unless the primary anticompetitive effect those actions may have is limited to the industry in question.

■ Even though the CAB would not be able to "approve," and thereby grant immunity to acts having anticompetitive effects in an industry not regulated by the CAB, and even though the CAB does not have the expertise, incentive, or means to deal with all of the inter-industry ramifications of this problem, we do not imply that the District Court's action in staying its proceedings until the CAB reviewed the matter was erroneous. The fact that a regulated industry is involved and that some of the issues in this antitrust case deal with matters within the expertise of the regulatory agency, gives the CAB a substantial interest in this litigation, though not exclusive primary jurisdiction over it, since the matters are not confined to intra-industry effects. For example, a court may face a situation where a regulated firm's entrance into a business not regulated by the same agency has anticompetitive effects on firms both within and without the regulated industry, or, as in this case, where an agency's expertise may be a valuable aid to the court,

or where the act complained of may constitute not only an un-immunizable antitrust violation, but also a violation of the regulatory agency's rules. In such situations, in the interest of comity and good judicial administration in seeking to interfere as little as possible with the workings of the regulatory agency, the courts should seek, if consistent with the interests of justice and the rights of injured parties not under the auspices of the agency, to stay its hand wherever possible to allow the regulatory agency to resolve the intra-industry aspects of the case first. But, in cases such as the instant case, where there is a substantial adverse effect on an industry not regulated by the agency in question, and in view of the reasons heretofore stated, the court should maintain its jurisdiction, and utilize its powers (including the issuance of preliminary injunctions), as it finds necessary.

In the case of *Wheelabrator Corp. v. Chafee,* 147 U.S.App.D.C. 238, 455 F.2d 1306 (1971), the District of Columbia Circuit, facing a problem of overlapping agency and court jurisdiction, advanced an analogous accommodation between agency and judicial jurisdiction:

"Plaintiff's application to the GAO in June did not preclude its subsequent application to the District Court, while the matter was still pending in GAO, for injunctive relief to prevent irreparable injury from the imminent bid opening. Under the doctrine of primary jurisdiction, a court may entertain an action for permanent relief and defer its consideration of the merits until an agency 'with special competence' in the field has ruled on the issues, if necessary maintaining the status quo pendente lite with injunctive relief avoiding irreparable injury pending such agency consideration. *Brawner Building, Inc. v. Shehyn,* 143 U.S.App.D.C. 125, 442 F.2d 847 (Feb. 23, 1971). This doctrine has application to the General Accounting Office even assuming that its function is advisory since it has the special competence and experience that is the life

and reason of the primary jurisdiction rule. *Best v. Humboldt Placer Mining Co.,* 371 U.S. 334, 338, 83 S.Ct. 379, 9 L.Ed.2d 350 (1963); *United States v. Western Pac. R. Co.,* 352 U.S. 59, 63–64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). The court has the last word, but it can properly seek the benefit of whatever contributions can be made by an agency whose 'area of specialization' embraces problems similar to or intermeshed with those presented to the court. 3 K. Davis, Administrative Law Treatise § 19.09 at 53 (1958).

"The preliminary injunction by a court pending GAO determinations may provide a felicitous blending of remedies and mutual reinforcement of forums, since even the relatively expeditious GAO (fn. 13) may run into delays on decisions that undercut effectiveness of relief (see fn. 11). The preliminary injunction may be used to preserve the status quo and while securing for the court the benefit of the GAO's expertise. Where a court has warrant for issuing an injunction pending GAO determination it may be able to obviate the objection sometimes leveled at GAO's procedure, that the time required sometimes renders the matter moot prior to GAO's determination.

"In considering whether to extend a preliminary injunction, or issue a permanent injunction, against a procurement determination the court may properly take into account the GAO's concurrence in the executive determination, although the court does have the last word and should not shrink from exercise of its power when the conditions justify an injunction. *Steinthal v. Seamans,* 147 U.S.App.D.C. 221, 455 F.2d 1289, decided this day." (*Id.* at 1316–17.) (Footnote omitted.)

Having held that the District Court had jurisdiction to issue a preliminary injunction, we turn to the merits of the question of whether the court below should have issued the preliminary injunction on the facts of this case. Foremost needed to make a convincing showing on two points to be entitled to obtain a preliminary injunction against Qantas. First, that Foremost was being irreparably injured;[4] and second, that it is likely to prevail at trial on the merits. The opinion of the court below indicates to us the District Court had ample evidence to support each of these findings.[5] We do not find the District Court's granting of

---

**4.** We have exhausted every means of finding in the "cease and desist" provisions of 49 U.S.C. § 1381, a remedy as expeditious, fair, and equitable as that provided in the temporary injunction provisions of Rule 65 F.R. Civ.P.

The rules promulgated by the Civil Aeronautics Board implementing the provisions of § 1381, and other sections of Title 49 U.S.C. (14 C.F.R. § 302 *et seq.*) relating to proceedings before the C.A.B., are devoid of anything which would permit an administrative law judge or the board to expedite proceedings under § 1381. There is no provision for a *temporary* cease and desist order, nor is anything in the regulations which would permit the judge or the board to shorten the procedure in this type of proceeding. § 1381 requires notice and a hearing. § 302.35 C.F.R., providing for a "shortened procedure" in certain instances, is not applicable to § 1381, which requires a hearing. The procedures provided in C.F.R. 302.1301, *et seq.,* and 302.1401, *et seq.,* have no application to hearings under 49 U.S.C. § 1381. We are forced to conclude that Fore-

most might lose its entire business while attempting to get a cease and desist order under the mentioned statute.

**5.** "18 In April 1973 Foremost sold 310 (passenger) tours; in April 1974, 102. In May 1973 Foremost sold 581 tours; in May 1974, 65. In June 1973 Foremost sold 539 tours, as of June 20, 1974, 29."

\* \* \* \* \* \*

"21 Certain inquiries have been made by telephone of Qantas reservations staff in Honolulu since April 1, 1974, concerning Foremost's Royal Road Tours. On such occasions, Qantas reservations staff have furnished the person making the request with information relating to Qantas' Holiday Tours in the South Pacific rather than Foremost's Royal Road Tours. On at least one occasion Qantas switched a specific request for a Royal Road Tour to a Qantas Holiday Tour without informing the tour agent of the change."

*Foremost International Tours, Inc. v. Qantas, etc.,* 379 F.Supp. 88, 92 (1974), Findings 18 and 21.

288

the preliminary injunction to be clearly erroneous.

We therefore *affirm*.