**ALOHA AIRLINES, INC., Plaintiff,**

v.

**HAWAIIAN AIRLINES, INC., Defendant.**

Civ. A. No. 72-3594.

United States District Court, D. Hawaii.

Oct. 11, 1972.

Vernon F. L. Char, Honolulu, Hawaii, for plaintiff.

Ted G. Clause, Honolulu, Hawaii, and Joseph L. Alioto, Lawrence E. Alioto, Peter J. Donnici, San Francisco, Cal., for defendant.

## DECISION

SAMUEL P. KING, District Judge.

Plaintiff Aloha Airlines, Inc. (Aloha) and defendant Hawaiian Airlines, Inc. (HAL) are both air carriers incorporated in the State of Hawaii. By virtue of certificates of public convenience and necessity issued to them by the Civil Aeronautics Board (CAB), they provide nearly all air transportation of persons, property and mail among the several islands of the State of Hawaii.

In the original complaint of July 3, 1972, plaintiff alleged that defendant beginning as early as 1968 engaged in an attempt to monopolize this inter-island air transportation system in violation of § 2 of the Sherman Act (15 U.S.C. § 2). Plaintiff listed seven acts which defendant allegedly undertook "with the predatory intent and purpose of eliminating plaintiff as a viable competitor" (¶ 11 of the Complaint) and "with full knowledge of its impact on plaintiff and with the intent of injuring or destroying plaintiff" (¶ 12 of the Complaint). These are: (1) excessive (vis-a-vis the needs of the public) flight schedules; (2) excessive purchasing, ordering, leasing (or agreeing to lease) of aircraft; (3) misrepresenting its schedule to the public, (4) providing below cost servicing to interstate air carriers between stops; (5 & 6) publicizing the fact that plaintiff and defendant should merge, while twice in bad faith renouncing merger agreements into which defendant had entered; and (7) opposing before the CAB plaintiff's request for a subsidy. As a result of these alleged practices, plaintiff claims it was damaged in the amount of $7,700,000 and prays for treble damages under Section 4 of the Clayton Act (15 U.S.C. § 15).

Pursuant to F.R.Civ.P. 12(c), defendant now moves for an order dismissing plaintiff's complaint on the grounds that (1) it fails to state a claim upon which relief can be granted and/or (2) this court lacks jurisdiction over the subject matter and parties. Alternatively, on the same basis, defendant moves under F.R.Civ.P. 56 for an order of summary judgment as to all the claims alleged in the complaint. If neither of the above are granted, the defendant then requests that certain allegations in the complaint be stricken pursuant to F.R.Civ.P. 12(f).

Defendant's motions are based on four alternative contentions. First, the CAB has exclusive jurisdiction over the subject matter of this action. Second, the CAB has primary jurisdiction and this Court should await further proceedings by the Board. Third, plaintiff's complaint fails to allege the necessary elements for an attempt to monopolize which is prohibited by § 2 of the Sherman Act. Fourth, Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) forbids any antitrust claim based on defendant's opposition to Aloha's subsidy request before the CAB.

This Court finds none of these arguments convincing.

*Exclusive Jurisdiction of the CAB*

Relying on Pan American World Airways, Inc. v. United States, 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963) (*Pan Am*), HAL argues that all seven acts alleged in the complaint are within the exclusive authority of the CAB and therefore this Court is precluded from exercising its normal antitrust jurisdic-

tion. HAL contends that its position is supported by the Board's past participation in the disputes between the parties. A brief background history of this dispute follows.

On Sept. 16, 1968, Aloha filed before the CAB a petition for subsidy award under 49 U.S.C. § 1376(b)(3), requesting that it be given an annual award of $1,784,784. This request was based on substantial recent losses by Aloha which it contended were in part caused by HAL's scheduling policy. On May 16, 1972, the CAB awarded Aloha a subsidy of $789,000 for losses sustained from Sept. 16, 1968 through Feb. 29, 1969, specifically finding that Aloha's losses during this period were attributable to the uneconomic competition of HAL. Concerning Aloha's subsequent losses, the Board concluded that Aloha failed to satisfy the two requirements of § 1376(b)(3), i. e., (1) that its own management was neither "honest, economical nor efficient" and (2) that the operations for which the subsidy was requested were not in the public interest. Therefore, the remainder of Aloha's request was denied. On June 27, 1972, Aloha filed a Petition for Reconsideration before the Board.

In addition to the above Aloha filed on Nov. 12, 1969, a complaint against HAL alleging a violation of 49 U.S.C. § 1381 due to the latter's scheduling practices. On Dec. 12, 1969, HAL filed a complaint against Aloha based on the same allegations. After a CAB hearing examiner recommended approval of a proposed merger between the two parties, both complaints were dismissed, only to be reactivated on May 10, 1971 because the merger plans failed to materialize. Finally, on July 16, 1971, the parties reached an agreement regarding their scheduling practices for a period running from July 15, 1971 to July 15, 1973, the Board giving its approval and retaining jurisdiction as required under 49 U.S.C. § 1382. The overscheduling complaints were then dismissed again.

As Chief Judge Lumbard stated in Trans World Airlines, Inc. v. Hughes,

332 F.2d 602 at 606 (2nd Circuit 1964) (TWA), to be decided by the Supreme Court this term, 405 U.S. 915, 92 S.Ct. 960, 30 L.Ed.2d 785:

"The proposition has so often been stated that it has become hornbook law that immunity from the operation of the antitrust laws is not lightly to be inferred from the enactment of a regulatory statute, see Georgia v. Pennsylvania R. Co., 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051."

Justice Douglas in *Pan Am* echoed the same idea, specifically referring to the Aeronautics Act:

"No mention is made of the Department of Justice and its role in the enforcement of the antitrust laws, yet we hesitate here as in comparable situations, to hold that the new regulatory scheme adopted in 1938 was designed completely to displace the antitrust laws—absent an unequivocally declared congressional purpose so to do. While the Board is empowered to deal with numerous aspects of what are normally thought of as antitrust problems, those expressly entrusted to it encompass only a fraction of the total. Apart from orders which give immunity from the antitrust laws by reason of § 414, the whole criminal law enforcement problem remains unaffected by the Act. Cf. United States v. Pacific & Arctic Railway & Navigation Co., 228 U.S. 87, 105, 33 S.Ct. 443, 57 L.Ed. 742. Moreover, on the civil side violations of antitrust laws other than those enumerated in the Act might be imagined. We, therefore, refuse to hold that there are no antitrust violations left to the Department of Justice to enforce." 371 U.S. 296 at 304–305, 83 S.Ct. 476 at 482.

This general principle is further reflected in the Act's own saving clause, 49 U.S.C. § 1506, which states:

"Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of

this chapter are in addition to such remedies."

This Court believes that HAL's reliance on *Pan Am* as applied to the facts in this case is misplaced.

■■■ *Pan Am* held that in an injunctive action by the Justice Department, disputes involving certain specific matters (division of territories, allocation of routes and combinations between common carriers and air carriers) are within the CAB's exclusive jurisdiction. In *Pan Am,* money damages were not sought. Indeed it is impossible for the CAB to award damages under the Act.[1] Therefore, while Aloha could have brought an action under § 1381 based on HAL's overscheduling (similar to its earlier action of Nov. 12, 1969), its sole relief against HAL would be completely prospective.[2] It would not obtain from the CAB the treble damage remedy for which it prays in this complaint.

■■■ The validity and applicability of the following statement in S.S.W., Inc. v. Air Transport Assoc. of America, 89 U.S.App.D.C. 273, 191 F.2d 658 at 663 (1952) has not been changed by the subsequent *Pan Am* decision:

"The prayer for treble damages under the antitrust laws raises a different problem. The Civil Aeronautics Act, unlike the Interstate Commerce Act and the Shipping Act, does not authorize the award of damages by the Board for violation of its provisions. Where specific damage provisions are contained in regulatory statutes, it has been held that there may be no recovery of treble damages under the antitrust laws. And this even in a statute such as the Interstate Commerce Act which contains a clause saving all preexisting remedies at common law or by statute. Here, however, we have both a saving clause, which provides that 'Nothing contained in this Act shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies' and a statute which conspicuously makes no provisions for damages. Reading the saving clause in the light of congressional failure to provide a remedy for damages in the Civil Aeronautics Act, we conclude that Congress did not intend to deprive an air carrier of its right to seek treble damages for violations of the antitrust laws. This accords with the Supreme Court's determination that it could grant injunctive relief under the antitrust laws against a combination of railroads under circumstances where the Interstate Commerce Commission was not authorized to grant comparable relief."

See also, *TWA, supra,* 332 F.2d at 609; and *Pan Am, supra,* 371 U.S. at 310–311 and 321, 83 S.Ct. at 476.

Moreover, the seven acts alleged in plaintiff's complaint are clearly distinguishable from the acts involved in the *Pan Am* case; none can be considered basic to the regulatory scheme of the Act. See, *e. g., TWA, supra,* 332 F.2d at 608–609. Indeed, the CAB is specifically forbidden to regulate scheduling, under 49 U.S.C. § 1371(e)(4). In this regard, this Court rejects HAL's argument that because a CAB approved merger under 49 U.S.C. § 1378 is expressly immune from antitrust attack under § 1384, any acts preceding that

---

1. HAL argues that the subsidy award was the equivalent to damages and should be so regarded. This ignores the procedure under which the subsidy is given and the requirements which must be satisfied under 49 U.S.C. § 1376(b)(3). In short, plaintiff's ability to recover in an antitrust claim, and the extent of that recovery, involve different questions than those considered in a subsidy award under § 1376(b)(3).

2. It should be noted that the parties' agreement of July 16, 1971 regarding their scheduling difficulties, and the CAB's subsequent approval of it under § 1382, precludes any antitrust claim based on HAL's past July 15, 1971 scheduling which was in conformity with that agreement. See 49 U.S.C. § 1384. Aloha's complaint, however, recognizes this fact when it admits that HAL's alleged overscheduling lasted only "until late 1970".

merger cannot be the basis of an antitrust suit. See, *e. g.*, *TWA*, *supra* at 610 (its analysis regarding post-merger acts is just as applicable to pre-merger ones). Moreover, we have no merger in this case; § 1384 is not activated and there are no policy reasons for allowing HAL to negotiate for a merger, as Aloha contends, in bad faith. This Court is not saying that Aloha's allegations in this regard are true, but only that they are sufficient, if true, to state a cause of action.

### Primary Jurisdiction of the CAB

■ As already mentioned, the CAB has no power to award damages for past unfair competitive practices; it is limited under § 1381 to issuing cease and desist orders against prospective conduct only. However, Aloha's contentions are based on past conduct by HAL, especially overscheduling, which plaintiff admits is no longer a problem. Moreover, the standards and issues involved in awarding a subsidy under § 1376(b)(3) are different from those involved in awarding damages in an antitrust case. Therefore, this Court cannot, and should not, apply the doctrine of primary jurisdiction. See Allied Air Freight, Inc. v. Pan American World Airways, Inc., 393 F.2d 441 (2nd Circuit, 1968).

### Plaintiff's Complaint Fails to State a Cause of Action

On its face, Aloha's complaint is adequate. See Walker Distributing Co. v. Lucky Lager Brewing Co., 323 F.2d 1 (9th Circuit, 1963).

### Noerr Issue

■ Although most of HAL's contentions in its motion to strike have already been rejected, nothing has yet been said of its argument that ¶ 11(g) of Aloha's complaint, relating to HAL's alleged opposition to Aloha's subsidy request before the CAB, should be stricken because HAL's conduct before the CAB is immune from an antitrust action, citing the *Noerr* case, *supra*.

Aloha's allegations fall within the *Noerr* "sham" exception as interpreted most recently in California Motor Transport v. Trucking Unlimited, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). If plaintiff can prove that HAL opposed its subsidy with "the predatory intent and purpose of eliminating plaintiff as a viable competitor" (¶ 11 of the Complaint) and "with full knowledge of its impact on plaintiff and with the intent of injuring or destroying plaintiff" (¶ 12 of the Complaint), then the *Noerr* protections do not apply.

### Summary Judgment

Summary judgment is not appropriate on the present state of the record.

### Conclusion

For the reasons stated above, defendant's motions will be denied. An appropriate order to that effect will be signed upon presentation by either counsel through opposing counsel.