HAWAIIAN AIRLINES, INC.,
Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent.

No. 72–1662.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 31, 1974.

Decided April 4, 1975.

Ronald D. Eastman, Washington, D. C., with whom James M. Verner, Washington, D. C., was on the brief for petitioner.

Glen M. Bendixsen, Associate Gen. Counsel, C.A.B., with whom Richard Littell, Gen. Counsel, O. D. Ozment, Deputy Gen. Counsel, Rozann M. Skozen, Joan Marie Frankel, Attys., C.A.B., and Howard E. Shapiro, Atty., Dept. of Justice, were on the brief for respondent. R. Tenney Johnson, Gen. Counsel, C.A.B., at the time the record was filed and Robert L. Toomey, Atty., C.A.B., also entered appearances for respondent.

Before BAZELON, Chief Judge, FAHY, Senior Circuit Judge, and TAMM, Circuit Judge.

Opinion for the Court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

Petitioner, Hawaiian Airlines, Inc. (Hawaiian), seeks review of two orders of the Civil Aeronautics Board which, *inter alia,* awarded Hawaiian's competitor, Aloha Airlines, Inc. (Aloha), a subsidy for the period September 16, 1968 through February 28, 1969, and denied Hawaiian's petition for reconsideration of that order and a related order. Our review of the record elicits no error in the Board's orders and therefore, we affirm.

On September 16, 1968, Aloha petitioned the Board for a subsidy award pursuant to section 406(b) of the Federal Aviation Act of 1958.[1] Shortly thereafter, Hawaiian also petitioned for a subsi-

dy determination, seeking a class rate which would yield zero subsidy for both carriers. The petitions were consolidated for hearing, and on June 22, 1970, Administrative Law Judge (ALJ), then Examiner, Milton H. Shapiro issued his Initial Decision, App. at 75–175, which was subsequently adopted with slight modification by the Board. CAB Order No. 72–5–62 (May 16, 1972), App. at 24–51. The Board specifically agreed "with the examiner's conclusion that Hawaiian is entitled to no subsidy for either the past or future periods, . . . that Aloha should be awarded subsidy for the 5½ month period September 16, 1968 through February 28, 1969, and that Aloha should be awarded no subsidy for the remainder of the past period or for the future period." *Id.* at 3, App. at 27. However, the Board did modify the specific amount of subsidy awarded Aloha, finding "that certain adjustments which the examiner declined to make to Aloha's operating results should have been made, and that certain technical errors in the examiner's computations should be corrected." *Id.* The cornerstone of the ALJ's decision and the Board's order was the finding that, except for the 5½ month period for which Aloha was awarded a subsidy, both carriers engaged in a "scheduling war", resulting in their failure to attain reasonable load factors and thus warranting denial of subsidy under the "honest, economical,

---

1. Section 406(b) of the Act, 49 U.S.C. § 1376(b) (1970), reads:

   (b) Rate-making elements
   In fixing and determining fair and reasonable rates of compensation under this section, the Board, considering the conditions peculiar to transportation by aircraft and to the particular air carrier or class of air carriers, may fix different rates for different air carriers or classes of air carriers, and different classes of service. In determining the rate in each case, the Board shall take into consideration, among other factors, (1) the condition that such air carriers may hold and operate under certificates authorizing the carriage of mail only by providing necessary and adequate facilities and service for the transportation of mail; (2) such standards respecting the character and quality of service to be ren-

   dered by air carriers as may be prescribed by or pursuant to law; and (3) the need of each such air carrier (other than a supplemental air carrier) for compensation for the transportation of mail sufficient to insure the performance of such service, and, together with all other revenue of the air carrier, to enable such air carrier under honest, economical, and efficient management, to maintain and continue the development of air transportation to the extent and of the character and quality required for the commerce of the United States, the Postal Service, and the national defense. In applying clause (3) of this subsection, the Board shall take into consideration any standards and criteria prescribed by the Secretary of Transportation, for determining the character and quality of transportation required for the commerce of the United States and the national defense.

and efficient management" standard of section 406(b). Regarding the 5½ month period, the Board concluded that "the examiner found that Aloha's low load factor was the *sole* result of Hawaiian's scheduling practices . . . [and] thus beyond its control, and it cannot be found that Aloha's scheduling was the product of other than honest, economical and efficient management." *Id.* at 10–11, App. at 34–35 (emphasis added, footnote omitted).

On February 7, 1973, the Board denied Aloha's petition for reconsideration of Order No. 72–5–62 and Hawaiian's motions to confine certain findings in Order No. 72–5–62 to the period ending September 30, 1970, and to reopen the record to take further evidence on the issue of the amount of subsidy required for Hawaiian. CAB Order No. 73–2–29 (February 7, 1973), App. at 52–71. At this point the Board noted that Aloha had filed an antitrust suit against Hawaiian on July 3, 1972, which alleged that beginning as early as 1968, Hawaiian attempted to monopolize the inter-island air transportation system in violation of section 2 of the Sherman Act, 15 U.S.C. § 2 (1970), and sought treble damages of $23,100,000 under section 4 of the Clayton Act, 15 U.S.C. § 15 (1970). *Id.* at 10, App. at 61; *see* Aloha Airlines, Inc. v. Hawaiian Airlines, Inc., 349 F.Supp. 1064 (D.Hawaii 1972) (denying Hawaiian's Rule 12(c) motion to dismiss, Rule 56 motion for summary judgment and Rule 12(f) motion to strike), aff'd on interlocutory appeal, 489 F.2d 203 (9th Cir. 1973). The Board concluded that "any injury suffered by Aloha during [the 5½ month] period increased its subsidy need" and, if that need were "subsequently satisfied in whole or in part by Hawaiian, Aloha's recognizable need is diminished and its subsidy must be reduced." CAB Order No. 73–2–29 at 10, App. at 61. Consequently, the Board amended Order 72–5–62 to provide for the reduction of Aloha's subsidy award by whatever recovery Aloha received from Hawaiian in the antitrust case. However, "out of an abundance of cau-

tion," the Board noted "that nothing herein or in Order 72–5–62 should be considered as an expression of the Board's view concerning the merits of Aloha's complaint." *Id.* at 10–11, n. 15, App. at 61–62, n. 15.

On May 4, 1973, Hawaiian petitioned the Board for reconsideration of Orders 72–5–62 and 73–2–29 in light of an April 2, 1973 ruling of the district court in Hawaii that the Board's following findings of fact be deemed conclusively adjudicated for purposes of the antitrust proceeding:

A. During the years 1968 and 1969, Hawaiian could reasonably have attained a load factor of 57.7 percent under honest, economical and efficient management and in the absence of excessive competitive scheduling.

B. During the years 1968 and 1969, Aloha could reasonably have attained a load factor of 55.1 percent under honest, economical and efficient management and in the absence of excessive competitive scheduling.

C. During the period September 18, 1968, through February 28, 1969 Aloha's low load factor was the result solely of Hawaiian's scheduling practices. During this period, Aloha made reasonable attempts to adjust its capacity downward, but in the face of a continued expansion of schedules by Hawaiian was unable to stem the decline in its own load factor.

CAB Order No. 73–6–109 at 1–2 (June 28, 1973), App. at 72–73. Concerned that the Board's findings, unless clarified, might have adverse collateral consequences in the antitrust suit, Hawaiian requested the Board to clarify the "intent" of its findings *vis-a-vis* the issue of excessive or unlawful competition and to explain that, because of the judgmental nature of load factor determinations, they should not be regarded as precise. Hawaiian also objected to the Board's characterization of the ALJ's finding that Aloha's low load factor during the 5½ month period was the *sole* result of Hawaiian's scheduling practices. *Id.* at

2, App. at 73. In Order 73–6–109, the Board denied Hawaiian's petition for reconsideration, resting on its two prior opinions and the ALJ's Initial Decision. *Id.* at 2–3, App. at 73–74.

On petition for review to this court, Hawaiian raises several objections to the Board's orders. Hawaiian challenges the Board's finding that its scheduling practices were the *sole* cause of Aloha's low load factor as inconsistent with other portions of Order 72–5–62 and not supported by substantial record evidence. After submission of the case, we too were concerned with this point, especially in view of what appeared to be contradictory evidence in the ALJ's Initial Decision. *See* Aloha Airlines, Inc. and Hawaiian Airlines, Inc., CAB Docket No. 20244 et al. at 15, 17–19, 26 (Initial Decision, June 22, 1970), App. at 94, 96–98, 105. Thus we remanded the record to the Board for supplementation to clarify the ambiguity surrounding the "sole cause" finding. Hawaiian Airlines, Inc. v. C. A. B., No. 72–1662 (D.C.Cir. Order filed June 6, 1974).

■ On remand the Board considered the ambiguity and now agrees with Hawaiian that the ALJ did not find Hawaiian's scheduling practices to be the "sole" cause for Aloha's low load factor. However, the Board concluded that the ALJ *did* find that "Hawaiian's scheduling practices were the 'primary cause of both carriers' declining load factors'" and that "[i]n any event, this was the intended purport of our findings in Order 72–5–62, and we again so find." CAB Order No. 74–11–86 at 3–4 (November 19, 1974). As now modified we cannot say that the finding is either inconsistent with other portions of Order 72–5–62 or unsupported by substantial record evidence, so adequately set forth in the Initial Decision and subsequent Board orders that we need not reiterate it here.

■ Hawaiian also asserts that the Board erred in failing to establish a class rate covering both Hawaiian and Aloha, citing several cases where the Board implemented its general policy to avoid subsidizing one carrier at a higher rate than its similarly situated competitor. Petitioner's Br. at 28–33. However, the Board's general policy is just that and not an immutable rule to be applied regardless of circumstances.[2] Having reasonably adopted the ALJ's findings that both carriers engaged in a scheduling "war", resulting in more flights than dictated by "honest, economical, and efficient management" and concomitantly, seat load factors lower than those which should have been reasonably attained, the Board was manifestly justified in disallowing any subsidy, including a class rate. As to the 5½ month period, Aloha's low load factor was not a result of its scheduling practices, but primarily Hawaiian's, which the Board found not dictated by "honest, economical, and efficient management." Regardless of the carriers' homogeneous characteristics, application of the Board's general class rate policy was plainly not mandated in the instant case, where this difference was established. We do not doubt the importance of class rates in the regulatory scheme, *see* Transcontinental & Western Air, Inc. v. C. A. B., 336 U.S. 601, 606–07, 69 S.Ct. 756, 93 L.Ed. 911 (1949), but concur that they are not applicable here.

The remaining issues argued by Hawaiian relate, directly or indirectly, to alleged ambiguities in the Board's orders and the Board's refusal to clarify them in light of the antitrust proceedings initiated by Aloha. Since the Board's orders are in fact quite clear, we regard Hawaiian's assertions to be ostensibly an expression of its concern that the Board's findings will be interpreted as a finding of predatory intent under the antitrust laws. While we can under-

---

**2.** Hawaiian concedes as much when it states:
> This is not to say that the CAB has followed this policy consistently in every single case. However, the policy has been generally followed, and the CAB should have at least explained its departure from it in this case.

Petitioner's Br. at 30, n. 26.

stand Hawaiian's concern, we are unable to discern a legitimate basis for it.

■ The "honest, economical, and efficient" standard of section 406(b) merely embodies, *inter alia,* "the Board's basic policy to refuse to underwrite any increased need which results from the provision of additional capacity at the expense of a decline in load factor." Trans-Pacific Airlines, Ltd., and Hawaiian Airlines, Ltd., Mail Rates, 20 CAB 668, 675 (1955) (footnote omitted). "[S]ince restraints that normally operate on corporate management may be subdued in the case of a subsidized operation," the standard necessitates a policy of strict scrutiny of management decisions which affect subsidy awards. Trans World Airlines, Inc. v. C. A. B., 128 U.S.App.D.C. 126; 385 F.2d 648, 657 (1967), cert. denied, 390 U.S. 944, 88 S.Ct. 1029, 19 L.Ed.2d 1133 (1968). Hence, it follows that a failure to meet the subsidy award standard is not necessarily equivalent to the requisite proof of "predatory intent" in an antitrust case. Indeed, in discussing Hawaiian's assertion in the antitrust case that the district court proceedings should be stayed pending the Board's exercise of primary jurisdiction to resolve Aloha's claim of unfair competition, the Ninth Circuit recognized this point, stating:

> While there are questions of the application of the doctrine of collateral estoppel to be resolved by the trial court when it considers what effect is to be given to the determinations made by the CAB in the subsidy proceedings that there was uneconomical scheduling by [Hawaiian] causing the right to a subsidy by Aloha, *the elements to be proved as to the existence of Sherman Act violations would under no circumstances be a matter for the Board to decide.*

Aloha Airlines, Inc. v. Hawaiian Airlines, Inc., 489 F.2d 203, 211 (9th Cir. 1973) (emphasis added). Moreover, the court continued:

> [The Board] was requested to, and it did, grant a subsidy for conduct occurring during a period five and one-half

months midway between the start and the conclusion of the alleged antitrust conspiracy, based upon "uneconomical scheduling." It is to be noted that this is all that it need find in order to grant subsidy. *It was not requested to, and it did not, find the other ingredients present which would be required in the bringing of an antitrust action.*

*Id.* (emphasis added). Whether the district court in Hawaii properly adopts the Board's findings for use in the antitrust suit is ultimately a matter for the Ninth Circuit to resolve, and we discern no need or basis for this court to interject itself in that proceeding.

In short, we think that the Board unambiguously resolved the issues before it and that its orders are based on substantial record evidence.

Affirmed.