**UNITED STATES of America**

v.

**BRANIFF AIRWAYS, INC. and Texas International Airlines, Inc.**

**Crim. No. SA–77–CR–164.**

United States District Court,
W. D. Texas,
San Antonio Division.

June 2, 1978.

Jamie C. Boyd, U. S. Atty., San Antonio, Tex., Wilford L. Whitley, Jr., Antitrust Div., U. S. Dept. of Justice, Washington, D. C., for the Government.

Melvin C. Garbow, Washington, D. C., J. Burleson Smith, San Antonio, Tex., W. B. West, III, Dallas, Tex., B. J. Bradshaw, Houston, Tex., George H. Spencer, San Antonio, Tex., and Thomas L. Raggio, Lake Charles, La., for defendants.

EDWIN F. HUNTER, Jr., Senior District Judge.

## MEMORANDUM RULING

On August 16, 1977, a federal grand jury in and for the Western District of Texas returned an indictment charging Braniff Airways, Inc., and Texas International Airlines, Inc., in two counts, with participation in a combination and conspiracy in restraint of trade and commerce in violation of Section 1 of the Sherman Act, and with participation in combination and conspiracy to monopolize trade and commerce in violation of Section 2 of the Sherman Act (15 U.S.C. §§ 1 and 2).

Pursuant to an order of this Court, the Government has filed a detailed bill of particulars. Defendants move for an order dismissing the indictment.

Four principal grounds are presented:

(1) The Federal Aviation Act vests the Civil Aeronautics Board with exclusive jurisdiction over the criminal violations of the antitrust laws charged in the indictment.

(2) If the Court rejects their claims of immunity, then, in the alternative, this Court should apply the doctrine of primary

jurisdiction and suspend this prosecution until certain Civil Aeronautics Board determinations are made.

(3) Certain litigation which was allegedly brought (as one of a series of overt acts) in furtherance of the conspiracy is immunized from antitrust attack by the First Amendment and the Noerr-Pennington Doctrine.

(4) Southwest's alleged "unlicensed" entry into the interstate market immunizes defendants from this criminal prosecution.

## IMMUNITY

The indictment charges defendants with engaging in a classic antitrust conspiracy. It is narrowly drawn to cover restraints of trade and monopolization of the tri-city intrastate market in Texas. Defendants insist that in the particular circumstances presented, the Federal Aviation Act displaces the Sherman Act, and that it is for the Civil Aeronautics Boards alone to assess their conduct. The essence of the argument is:

"This case is governed by four decisions of the United States Supreme Court. *Pan-American World Airways, Inc. v. United States,* 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963); *Hughes Tool Co. v. Trans World Airlines, Inc.,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973); *United States v. National Ass'n of Securities Dealers, Inc.,* 422 U.S. 694, 95 S.Ct. 2427, 45 L.Ed.2d 486 (1975); and *Gordon v. New York Stock Exchange, Inc.,* 422 U.S. 659, 95 S.Ct. 2598, 45 L.Ed.2d 463 (1975). "These decisions announce the rule that, where market entry and industry practices are subject to the 'pervasive supervisory authority' of a federal agency and there is such 'plain repugnancy' between the antitrust laws and the agency's special public interest standards that, if the antitrust laws were applied to such prac-

tices two regimes might collide, the agency's jurisdiction to regulate entry and competition in the industry 'pre-empts the antitrust field' and bars the courts from imposing antitrust sanctions."

■■■ The applicable interpretative standard was restated by the Supreme Court in *Cantor v. Detroit Edison Co.,* 428 U.S. 579, 597, 96 S.Ct. 3110, 3120, 49 L.Ed.2d 1141 (1976):

"The Court has consistently refused to find that regulation gave rise to an implied exemption without first determining that exemption was necessary in order to make the regulatory Act work, 'and even then only to the minimum extent necessary.'"

As the Court has written in the preceding term,

"Certain axioms of construction are now clearly established. Repeal of the antitrust laws by implication is not favored and not casually to be allowed. Only where there is a 'plain repugnancy between the antitrust and regulatory provisions' will repeal be implied." *Gordon v. New York Stock Exchange, Inc.,* 422 U.S. 659, 682, 95 S.Ct. 2598, 2611, 45 L.Ed.2d 463 (1975).

Applying these standards we find no reason to imply immunity. Immunization of defendants' alleged course of conduct would not serve the policies of the Federal Aviation Act, which condemns cutthroat competition. It would be contrary to congressional policy reflected in the criminal antitrust laws. As such, implied repeal is inappropriate and contrary to law.[1]

## EXPRESS IMMUNITY

Congress carefully delimited the scope of the express immunity exemption contained in the Federal Aviation Act. Under Section

---

1. Criminal enforcement of the antitrust laws is unaffected by the Federal Aviation Act, except to the extent the conduct has been expressly immunized by reason of § 414:

 "While the Board is empowered to deal with numerous aspects of what is normally thought of as an antitrust problem, those expressly entrusted to it encompass only a

fraction of the total. Apart from orders which give immunity from the antitrust laws by reason of § 414, the whole criminal law enforcement problem remains unaffected by the Act." *Pan-American World Airways, Inc. v. United States,* 371 U.S. 296 at 304–30, 83 S.Ct. 476 at 482, 9 L.Ed.2d 325 (underscoring ours).

412(a) of the Act, 49 U.S.C. § 1382(a), all intercarrier agreements which affect interstate air transportation must be filed with the CAB. Section 412(b) of the Act, 49 U.S.C. § 1382(b), then provides that:

"[T]he Board shall by order disapprove any such contract or agreement * * * that it finds to be adverse to the public interest, or in violation of this Act, and shall by order approve any such contract or agreement * * * that it does not find to be adverse to the public interest or in violation of this Act * * *."

Under Section 414 of the Act, 49 U.S.C. § 1384,

"[A]ny person affected by any order made under * * * [section] 412 of this Act shall be, and is hereby, relieved from the operations of the 'antitrust laws,' * * * insofar as may be necessary to enable such person to do anything authorized, approved, or required by such order."

■ Reading these interrelated provisions together, it is manifest that for an antitrust court to rule that conduct charged as violative of the antitrust laws is expressly immunized under Section 414 of the Federal Aviation Act, it must find (1) that the conduct charged was approved by a specific order of the CAB or was clearly contemplated by such an order and (2) that the CAB monitored and supervised the conduct complained of. *Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577. The ruling of the Supreme Court in *Hughes Tool* is, as defendants state, "the key decision explaining the scope of the antitrust immunity afforded by section 414 of the Aviation Act."

In rendering its holding, the Supreme Court made it clear that the Federal Aviation Act does not necessarily displace the antitrust laws. The Court stated at page 387, 93 S.Ct. at page 661:

"We repeat, however, what we said in the *Pan-American* case that the Federal Aviation Act does not completely displace the antitrust laws.

" 'While the Board is empowered to deal with numerous aspects of what are normally thought of as antitrust problems, those expressly entrusted to it encompass only a fraction of the total.' 371 U.S., at 305, 83 S.Ct. 476.

"One of the most conspicuous exceptions would be the combination or agreement between two air carriers involving trade restraints. See *Timken Co. v. United States,* 341 U.S. 593, 598, 71 S.Ct. 971, 95 L.Ed. 1199."

■ The proper analytical approach, pursuant to *Hughes Tool,* on the issue of whether the defendants' agreement to impair or eliminate Southwest is immunized under section 414 of the Federal Aviation Act, is best seen through an examination and analysis of two circuit court opinions considering this issue since *Hughes Tool: Scroggins v. Air Cargo, Inc.,* 534 F.2d 1124 (5th Cir. 1976), and *Aloha Airlines, Inc. v. Hawaiian Airlines, Inc.,* 489 F.2d 203 (9th Cir. 1973), *cert. denied,* 417 U.S. 913, 94 S.Ct. 2612, 41 L.Ed.2d 217 (1974). The principal lesson learned from these cases is that the determination of antitrust immunity under section 414 must turn to a great extent upon the facts presented and the type of conduct challenged.[2]

In *Scroggins,* the Fifth Circuit was presented with a case essentially on all fours with *Hughes.* In 1947, Air Transport, Inc. (ATI)[3] and Air Cargo, Inc. (ACI) entered into a contract whereby ATI would perform truck pick-up and delivery services for ACI in Atlanta. This agreement was specifically approved by the CAB in 1949 and had been renewed each year thereafter until 1971. In September 1971, ACI and ATI renegotiated their contract, inserting an express provision permitting ACI to deal with other truckers and to divide its business among them as it saw fit. Thereafter, ACI contracted with another firm and soon the other firm was receiving the bulk of the airlines' cargo business. Id. at 1129.

---

**2.** This is particularly clear in these two cases— one holding the conduct immunized and the other that the conduct was not so immunized.

**3.** Scroggins was the trustee in bankruptcy for ATI.

ATI then brought a civil suit challenging ACI's conduct in contracting with the second cargo handler and thereafter doing most of its business with that firm. The Fifth Circuit found that the conduct challenged was not only specifically contemplated, but was also precisely the conduct that the CAB had approved pursuant to the 1947 agreement and supervised actively thereafter.[4] The court stated:

"[T]he conduct alleged in this complaint is immunized from antitrust liability because (a) the actions complained of were within the contemplation of prior CAB orders which specifically considered effects upon future competition and (b) the CAB has retained an active supervisory jurisdiction to correct anticompetitive developments as they arise." *Id.* at 1132.

Thus, in *Scroggins* the Fifth Circuit recognized and applied the "two-part test" of *Hughes.* The Court found antitrust immunity because (1) the course of conduct was within the contemplation of prior CAB orders and (2) the CAB actively supervised the course of action. The Court ruled that ACI's conduct in contracting with, and thereafter dealing with, the second trucking firm was immunized not only because it was clearly pursuant to a valid CAB order, but also because it constituted the sole basis for the complaint, i. e., it was the "crux" of the complaint. *Id.* at 1132.

Thus, in applying the *Hughes* two-part test, the determining factor as to whether express immunity is conferred is the *nature and purpose of the course of conduct that is presented to the court.* The courses of conduct examined in *Hughes* and *Scroggins* differ substantially from the facts involved in this prosecution. A case involving a substantially similar course of conduct to that charged herein was examined in *Aloha Airlines, Inc. v. Hawaiian Airlines, Inc.,* supra, where the court held that the conduct charged as violating the antitrust laws was *not* immunized. In *Aloha,* one airline, Al-

oha, sued a competitor airline, Hawaiian, charging that Hawaiian was attempting to monopolize the inter-island air transportation system. Both Aloha and Hawaiian were CAB certificated carriers. Judge Tuttle of the Fifth Circuit, sitting by designation, wrote the opinion of the Court. Aloha's allegations of attempted monopolization involved the following:

Plaintiff listed seven acts which defendant allegedly undertook "with the predatory intent and purpose of eliminating plaintiff as a viable competitor" and "with full knowledge of its impact on plaintiff and with the intent of injuring or destroying plaintiff." These are: (1) excessive (vis a vis the needs of the public) flight schedules; (2) excessive purchasing, ordering, leasing (or agreeing to lease) of aircraft; (3) misrepresenting its schedules to the public; (4) providing below cost servicing to interstate air carriers between stops; (5 & 6) publicizing the fact that plaintiff and defendant should merge while twice in bad faith renouncing merger agreements into which defendant had entered; and (7) opposing before the CAB plaintiff's request for a subsidy. 489 F.2d at 205.

The Court recognized that a controlling precedent was the Supreme Court's decision in *Hughes.* Under *Hughes,* the Court recognized that its analytical role was to:

[D]etermine whether the acts of HAL which Aloha alleged as the basis of its antitrust suit and the actions of the CAB relative to them here fit the pattern of those found by the Court in *Hughes* to immunize them from the antitrust laws. 489 F.2d at 204.

The Court held that in no event could the CAB have approved the predatory conduct alleged which had as its dominant purpose the elimination of a competitor. *Id.* at 211–212, and therefore, it could not be immunized from the antitrust laws under Section 414 of the Act.

---

4. The activity of ACI in *Scroggins* was found by the Court to have been taken to further the expeditious handling of cargo at the Atlanta airports. This was the sole purpose for ACI's actions, and the effect on ATI was only inciden- tal to that purpose. Contrast that with the instant case, where the only purpose behind defendants' agreement to combine was to impair and eliminate Southwest as a competitor.

The facts in the instant prosecution of Braniff and TI militating against immunity are even stronger than in *Aloha.* As already pointed out, the CAB does not regulate intrastate air transportation, which is the market in the instant indictment. Neither does the CAB regulate Southwest. Thus, approval by the CAB of specific inter-carrier agreements relating to baggage handling or a credit card system could not immunize a continuing conspiracy with the "predatory intent and purpose of eliminating * * * [Southwest] as a viable competitor."[5]

The holdings of the circuit courts in *Scroggins* and *Aloha* are entirely consistent, albeit the result differed.[6] That the *Aloha* and *Scroggins* cases produced different results when the two-part test of *Hughes* was applied demonstrates conclusively that the anticompetitive purpose of the conduct charged as being unlawful is a key element, and where this anticompetitive purpose is the dominant fact, no antitrust immunity will be accorded. In *Aloha,* the challenged conduct was designed to eliminate a competing airline. In *Scroggins,* ACI was simply substituting one air cargo handler who was performing inadequately, with another, pursuant to its CAB-approved agreement. We are aware of no cases where antitrust immunity was found to exist where the purpose of the challenged conduct was to eliminate a competitor.

This is not a case where the Government is challenging the reasonableness of any particular rate, tariff, or schedule; nor one challenging the propriety of any rule, regulation or order of the CAB. What is challenged is defendants' seeking, pursuant to a continuing agreement, understanding and concert of action, to impair the ability of Southwest Airlines to commence and maintain operations in competition with them in the tri-city intrastate market of Texas and thereafter to eliminate Southwest from that market. [Indictment, ¶ V(19) and (20); VIII(25) and (26).] The essence of the indictment, therefore, is that defendants conspired to eliminate Southwest and to thereafter monopolize the intrastate market. It is that conduct to which this court must look. *Hughes Tool,* supra; *Aloha Airlines,* supra.

Defendants' contention that their alleged conspiracy to impair the ability of Southwest to compete in the tri-city intrastate market of Texas is immunized under § 414 must fail for at least three reasons. First, the conduct alleged in the indictment has not been approved by the CAB nor is it within the contemplation of prior CAB orders.[7] Second, the indictment alleges a single connected scheme, successive elements of an isolated analysis of each overt act, taken in a vacuum without reference to the overall conspiracy is inappropriate. Third, § 414 could in no way exempt those por-

---

**5.** The Ninth Circuit also decided the case of *Foremost Int'l Tours v. Qantas Airways, Ltd.,* 525 F.2d 281 (9th Cir. 1975). There, a tour producer brought a civil antitrust suit, charging Qantas with predatory practices in producing and selling an integrated tour package in competition with it. Qantas contended its actions were immunized by the CAB's approval of IATA Resolution 810 D and E, which specifically permitted Qantas and other airlines to go into the tour business. The court held, nonetheless, there was no immunity:

Neither do we think the CAB's approval * * immunizes Qantas for an attempt (if proven) to monopolize the tour business over which the CAB in general has no control. 525 F.2d at 286.

**6.** The Fifth Circuit in *Scroggins* expressly recognized the correctness of the *Aloha* holding and based its holding on the distinction be-

tween the facts of the two cases as pointed out above. 534 F.2d at 1132.

**7.** When the conspiracy charges here are viewed as a whole, it is clear that the defendants' course of conduct had as its dominant purpose the elimination of a serious competitive threat. In 1951, when faced with a similar charge involving competing airlines, the New Jersey District Court held:

I cannot concur with the suggestion that a conspiracy to drive a competitor out of business, as alleged here, is the type of agreement encompassed within the statute [section 414 of the Federal Aviation Act] * * for possible immunity from the antitrust laws. *Slick Airways, Inc. v. American Airlines, Inc.,* 107 F.Supp. 199, 207 (D.N.J.1952). (underscoring ours).

This portion of the holding by the *Slick* court has never been questioned.

tions of the indictment which assert repetitive and inconsistent litigation and intentional misuse of the administrative processes. It would be inappropriate and unprecedented for this court to hold that this criminal action is barred by § 414 of the Federal Aviation Act.

## PRIMARY JURISDICTION

■ Defendants argue that if the court rejects their claims of exclusive jurisdiction, then in the alternative, we should apply the doctrine of primary jurisdiction and suspend this prosecution until certain CAB determinations have been made. The doctrine of primary jurisdiction is a procedural accommodation between courts and regulatory agencies where the court's subject matter jurisdiction over the alleged antitrust violation remains in effect, pending resolution of certain issues by the agency. "No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *United States v. Western Pacific RR Co.,* 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). The Fifth Circuit has recognized that primary jurisdiction is helpful where the principal issue involves the reasonableness of tariffs or rates or where it turns on technical questions involving agency rules or regulations. *Mercury Motor Express, Inc. v. Brinke,* 475 F.2d 1086, 1092 (5th Cir. 1973). Such is not the case here, for if such matters have any relevance, they are clearly peripheral to the main issue.

The clear intent of Congress is that an agreement to drive a competitor out of business is not in the public interest and thus not approvable by the CAB. This was the conclusion of *Aloha Airlines, Inc. v. Hawaiian Airlines, Inc.,* supra:

"As pointed out by the trial court the CAB could in no event have authorized by order the conduct which has here been made the basis of the antitrust action. It goes without saying that the CAB could

not, by any order entered by it, authorize overscheduling (which it found to exist) with 'the predatory intent and purpose of eliminating plaintiff as a viable competitor' and 'with full knowledge of its impact on plaintiff and with the intent of injuring or destroying plaintiff.' "

■ The Government's case does not conflict with the CAB's administration of the Federal Aviation Act. In no way will this court's adjudication impinge upon past or future actions of the CAB. In this case, technical questions which call for the judgment of an agency are not under consideration. Nothing that the agency could do would help with the resolution of the issue before this court, i. e., whether defendants have violated the criminal antitrust laws, a decision not within the authority of the CAB and the resolution of which, in this court, requires no assistance from any agency proceedings.

## NOERR–PENNINGTON

The indictment alleges that defendants, as one of a series of overt acts in furtherance of their conspiracy to eliminate Southwest, instituted a pattern of litigation before courts and agencies that was repetitive, inconsistent, undertaken without regard to the merits, with knowledge of its adverse impact, and with the intent to harass, injure or destroy Southwest. Defendants move to dismiss these allegations on the ground that the alleged activity complained of is exempted from the coverage of antitrust laws by the Noerr-Pennington doctrine. This doctrine refers to two Supreme Court decisions which have held that the First Amendment guarantees individuals the right to petition governmental bodies in an attempt to influence their decisions, even if the purpose and effect of such influence is anticompetitive. *Eastern Railroad Presidents' Conference v. Noerr Multi Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers of America v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). In *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30

L.Ed.2d 642 (1972), the court extended the doctrine to adjudicatory proceedings:

> "The same philosophy governs the approach of citizens or groups of them to administrative agencies (which are both creatures of the legislature, and arms of the executive) and to courts, the third branch of Government. Certainly the right to petition extends to all departments of the Government."

In *Trucking Unlimited* it was alleged that defendants, who were highway carriers, had joined in a conspiracy to monopolize trade and commerce in the transportation of goods, a regulated industry. The conspiracy was carried out by concerted action to institute repeated state and federal proceedings to resist and defeat applications by plaintiffs to acquire operating rights or to transfer or register them. The litigation extended to rehearings, reviews and appeals from agency and court decisions.

The district court concluded that the litigation was immunized by *Noerr-Pennington*. Plaintiffs argued that defendants' actions fell within the "sham" exception. The district court did not agree:

> "* * * the First Amended Complaint does not allege that all or any of the oppositions mentioned in the pleading were filed or were to be filed without probable cause. The pleading carefully refrains from charging that the oppositions were false, misleading to the agency or lacking in factual allegations and legal theory arguably relevant to the function of the regulatory agency in determining public convenience, and necessity."

The Ninth Circuit reversed. The Supreme Court affirmed the Court of Appeals, stating:

> On their face [plaintiff's] allegations come within the "sham" exception in the *Noerr* case, as adapted to the adjudicatory process. 404 U.S. at 516, 92 S.Ct. at 614.

The Court noted that the complaint alleged that the purpose of the litigation was "putting their competitors, including plaintiff, out of business, of weakening such competitors, of destroying, eliminating and weakening existing and potential competition, and of monopolizing * * *."

In a case involving predatory practices in the airlines industry, *Aloha Airlines, Inc. v. Hawaiian Airlines, Inc.,* 349 F.Supp. 1064 (D.Hawaii 1972), *aff'd* 489 F.2d 203, *cert. denied* 417 U.S. 913, 94 S.Ct. 2612, 41 L.Ed.2d 217 (1974), the court considered a complaint alleging that the defendant, Hawaiian Airlines, attempted to monopolize the inter-Hawaii air transport system. One of the series of acts which plaintiff alleges that defendant undertook, with the predatory intent and purpose of eliminating plaintiff as a viable competitor, was to oppose, before the CAB, plaintiff's request for a subsidy. Defendant moved to strike this allegation. The court refused, holding:

> Aloha's allegations fall within the *Noerr* "sham" exception as interpreted most recently in *California Motor Transport v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). If plaintiff can prove that HAL opposed its subsidy with the "predatory intent and purpose of eliminating plaintiff as a viable competitor" (¶ 12 of the complaint), then the *Noerr* protections do not apply. 349 F.Supp. at 1068.

 If litigation is used as an integral part of a scheme to destroy competition, that litigation can lose its First Amendment protection. The concerted legal activity alleged in the indictment may ultimately turn out to be innocent and legitimate, but the Government is entitled to an opportunity to demonstrate at trial the precise nature of, and the extent to which the challenged conduct exceeds, lawful perimeters. The resolution of this issue will have to abide the event of trial.

## SOUTHWEST'S CARRIAGE OF INTERSTATE PASSENGERS

 Defendants argue that the indictment should be dismissed because Southwest's carriage of interstate passengers establishes a full legal defense. This is true, they say, because it is simply not an antitrust violation to restrain a form of compe-

tition which Congress, in an independent regulatory statute, has explicitly forbidden. This argument is premised on two assumptions which beg the question. The assumption that Southwest carries more than a *de minimus* volume of traffic moving as a continuous journey in interstate commerce is not resolved by the stipulation.[8] This involves a factual determination to be preceded by a legal evaluation of the distinctions between through and stopover passengers. The question of whether such passengers are or are not interstate is irrelevant, for even if defendants could prove that Southwest had carried interstate passengers,[9] it would in no way be dispositive of the issues in this criminal prosecution.

This action, brought in the name of the people of the United States, is to vindicate the public interest in preventing restraints of trade and monopolization. The focus here is properly upon the actions of the defendants and the danger such actions present to the public interest. Defendants' reliance on cases discussing the interests of private plaintiffs are thus inapposite.

> Clayton Act § 4 provides, *inter alia*: That any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefore * * *.

The cases cited by defendants, *Cottonwood Mall Shopping Center, Inc. v. Utah Power and Light Co.*, 440 F.2d 36 (10th Cir.), *cert. denied*, 404 U.S. 857, 92 S.Ct. 107, 30 L.Ed.2d 99 (1971); *Heath v. Aspen Skiing Corp.*, 325 F.Supp. 223 (D.Colo.1971); and *American Bankers Club, Inc. v. American Express Co.*, 1977–1 Trade Cas. ¶ 61,247 (D.C.Cir.1977), merely hold that the plaintiff in those cases did not have a property

interest or business which had been injured and for which damages could be recovered under Clayton Act § 4.

We have carefully reviewed defendants' reassertion of their arguments concerning vagueness and exculpatory evidence. No useful purpose would be served by a recitation of those arguments. We reiterate that our examination of the transcripts persuades us that they contain "nothing that could fairly be construed to create any question as to the Government's good faith and proper presentation."

The motions to dismiss are denied in all respects.[10]

---

**8.** The second assumption is that there is a conflict between the Sherman Act and the Federal Aviation Act. We have previously concluded that under the circumstances of this case, we perceive no such conflict.

**9.** However, during the conspiracy period, the status of Southwest was clear. The CAB determined in 1971 that it had no jurisdiction over Southwest. This decision was appealed by defendants to the District of Columbia Circuit Court of Appeals. In 1972, that court upheld

the determination by the CAB. *Texas International Airlines, Inc. v. CAB*, 154 U.S.App.D.C. 113, 473 F.2d 1150 (1972).

**10.** We wish to emphasize that there is not the slightest suggestion intimating guilt or innocence (not even a whisper). What, and all, we hold is that the Government is entitled to demonstrate at trial the precise nature of, and the extent to which the challenged conduct may exceed lawful perimeters.